### 8123.  WOODRUFF v. DOSS.

1. While the code provides that in an action to recover damages on account of an alleged malicious prosecution, "want of probable cause shall be a question for the jury, under the direction of the court" (Civil Code of 1910, § 4440), yet where the material facts are not in dispute, the existence or non-existence of probable cause for the prosecution is a question of law for determination by the court.

2. In this case, while the good faith of the person against whom the defendant instituted the prosecution alleged to be malicious may be reasonably inferred from facts and circumstances in proof, it is clear, according to the undisputed facts in the case, that there was probable cause for the prosecution; and therefore the verdict in favor of the plaintiff was contrary to law.

DECIDED JULY 26, 1917.

Action for malicious prosecution; from Floyd superior court — Judge Wright. January 13, 1916.

*Dean & Dean, L. H. Covington,* for plaintiff in error.

*Eubanks & Mebane, Barry Wright,* contra.

WADE, C. J.  This was an action to recover damages for an alleged malicious prosecution instituted by Woodruff against Doss,

the plaintiff in the lower court. In the petition the plaintiff alleged, that on May 16, 1914, Woodruff swore out a criminal warrant against him in the United States court, charging him with perjury and false swearing; that he was arrested under the warrant and detained by a deputy marshal of the United States, and finally carried before a United States commissioner, who admitted him to bond and set the case for trial on May 17, 1914, but afterwards, upon the motion of Woodruff, continued the hearing on the warrant until May 23, 1914; that Woodruff went before the United States grand jury, which was in session on the 17th, 18th, and 19th of May, 1914, and endeavored to procure an indictment against him for the offense set forth in the warrant, but the grand jury failed and refused to indict him and made a return of no bill; that on May 23, 1914. at the time set for a hearing before the commissioner, Woodruff, notwithstanding he made oath to the warrant and was subpœnaed as a witness in the case, failed and refused to appear and abandoned the prosecution, and thereupon the case was dismissed and came to an end and the petitioner was discharged. The petition further alleged that Woodruff instituted the said criminal proceeding for the deliberate purpose of injuring and damaging the petitioner, and in an effort to induce him to abandon a civil proceeding against a certain corporation known as the Interstate Chemical Company, and that the warrant was sworn out and the prosecution carried on maliciously, without probable cause; that because of the swearing out of the warrant and because of the currency of the report that it had been sworn out by Woodruff, and because of articles in a newspaper informing the public that the petitioner had been arrested and charged with perjury and false swearing, he suffered great mortification and mental agony; that the charge preferred against him by Woodruff was calculated to and did bring him into disrepute with his neighbors and friends, and the conduct of Woodruff in instituting and carrying on the prosecution tended to injure and did injure his name and fame, to his damage, etc.; and that the intention and sole purpose of Woodruff in swearing out the warrant was to injure, damage, and humiliate him.

To the petition were attached various exhibits showing the proceedings before the United States commissioner and before the United States grand jury. Likewise a copy of the warrant sworn

out by Woodruff was attached, which was as follows: "United States of America, Northern District of Georgia. Office of the United States commissioner at Rome, Georgia. Before me, John C. Printup, a commissioner duly appointed by the District Court of the United States of America, for the Northern District of Georgia, to administer oaths, to take acknowledgments of bail, and also to take depositions of witnesses in civil causes pending in the courts of the United States, pursuant to the provisions of the act of Congress in that behalf, personally came W. W. Woodruff, who, being duly sworn, deposes and says, that F. C. Doss did on May 14th, 1914, make an affidavit to a petition in bankruptcy against the Interstate Chemical Company, which petition was filed in the District Court of the United States for the Northern District of Georgia, Northwestern Division, which affidavit is in the following words and figures, to wit: 'State of Georgia, County of Floyd. F. C. Doss and————petitioning creditors mentioned and described in the foregoing petition do hereby severally make solemn oath that the statements of fact contained in the foregoing petition are true, according to the best of my knowledge, information, and belief. [Signed] F. C. Doss. Subscribed and sworn to before me this 14th day of May, 1914, as to F. C. Doss. [Signed] Graham Wright, N. P., Floyd Co., Ga.' Affiant says, that, on information, he verily believes said oath is false, in that said Chemical Company did not at the time of making said affidavit to said petition owe said Doss the sum of $3,630.87 as commissions due him as agent for said company for it, as in said petition alleged. Affiant makes this affidavit at the instance and request of the Interstate Chemical Company, for the arrest, commitment, and detention of said F. C. Doss, to await action of the grand jury in said district court; that affiant is president of said Chemical Company and acting in its behalf in this regard. [Signed] W. W. Woodruff.—Sworn to and subscribed before me, this 16th day of May, 1914. [Signed] J. C. Printup, U. S. Comm'r."

The defendant demurred generally to the petition, on the ground that no cause of action was set out, and also specially demurred to the allegations therein touching the appearance of Woodruff before the United States grand jury, and the further statement as to the news articles appearing in the public prints in reference to the charge of perjury and false swearing, made by Woodruff against

41

the plaintiff. The defendant amended his demurrer by adding thereto, as a specific ground, that the facts alleged in the petition failed to show that the prosecution was maliciously carried on, and in fact showed that it was not carried on to such an extent as to constitute a foundation for an action for malicious prosecution. A special demurrer objecting to an entry on one of the exhibits as a mere conclusion was also interposed, and was sustained by the court, while the remaining grounds of the demurrer and the amendment thereto were overruled. In the view we take of this case it is unnecessary to discuss or pass upon any of the various questions raised by the special demurrers or by the special grounds of the motion for a new trial. It appears clear to us, however, under the ruling in *Page* v. *Citizens Banking Co.,* 111 *Ga.* 73 (4) (36 S. E. 418, 51 L. R. A. 463, 78 Am. St. R. 144), that the court did not err in overruling the general demurrer. It was there held: "It is 'carrying on' a prosecution to cause a warrant to be issued, having the defendant therein arrested and his goods seized, having him brought before a committing magistrate, procuring continuances of the preliminary hearing, and requiring him to give bond for his appearance before the committing magistrate, notwithstanding the prosecution was finally abandoned in the committing court." Therefore, without considering the remaining demurrers, we come to a consideration of the evidence.

It was shown, without any conflict in the testimony, that Doss had been selling stock for the Interstate Chemical Company under the following contract: "This agreement, made and entered into this 15th day of January, 1912, by and between the Interstate Chemical Co., of Georgia, Rome, Ga., known hereafter as party of the first part, and F. C. Doss, of Rome, Ga., known hereafter as party of the second part, witnesseth: That said party, in consideration of mutual covenants and agreements herein contained, hereby contract and agree as follows, to wit: First: Said first party hereby appoints said second party its agent and salesman for the purpose of soliciting and procuring applications for treasury stock in the Interstate Chemical Co., of Georgia, and securing such other business in connection therewith as first party may expressly require in the following territory: in Georgia. Second: First party agrees to pay second party a commission of twenty-five per cent. on all applications for treasury stock in the Interstate Chem-

ical Co. that are accepted by first party; said commissions. to be due and payable as settlement in cash is made and turned over to first party, or, if notes are given in payment of stock, commissions are due and payable when said notes are paid in cash.   Third: First party agrees to advance, or loan, second party, from week to week, an amount not to exceed seventy-five per cent. of the amount of second party's commission on notes turned in and accepted by first party. . . [Other parts of the contract are immaterial.] In witness whereof the parties have subscribed their names and affixed their seals to duplicate copies thereof, the date and year first above written.   [Signed] Interstate Chemical Co., per P. D. Christian, Mgr.   F. C. Doss."

Under his construction of this contract Doss concluded that the Interstate Chemical Company was indebted to him in the sum of $3,630.87, by reason of the fact that it had transferred or hypothecated in some way notes taken by him for stock in said corporation, under this contract.   He testified:   "They went ahead and transferred those notes, some of which were not yet due, and that was the basis of my allegation that they owed me the amount stated there.  I figured up that this $3,630.87 is due me.   It took all of my notes that I had taken, whether paid to the Chemical Company or not, to make that amount of commissions due me.   There was a controversy between Mr. Christian and me as to how much the company owed me.   He contended that the company did not owe me commissions on my notes unless the makers had paid them. They refused to pay me any more.   They did not deny to me that they did not owe me this amount.·  They refused to pay it to me. I demanded it.   They have not paid it yet.   Before I made this affidavit in the bankruptcy court I had gotten 75 per cent. of the 25 per cent. I was entitled to."   The Interstate Chemical Company contended that it would not be indebted to Doss on the notes in question until payment of the notes "in cash," as provided by the terms of the written contract between them, by the makers of the notes or by some one for them.   The corporation insisted, in 'various discussions of the matter between Doss and some of the officers of the company, that the hypothecation of the notes by the company did not amount to a payment thereof "in cash;" and this contention appears to be obviously correct, since,· in the absence of anything to the contrary, it must be assumed that the company in-

dorsed the notes with recourse, at the time it discounted or hypothe-cated them, and therefore that it was still responsible thereon to the transferee in the event the original makers failed to pay in cash. The testimony further discloses that Woodruff had heard that Doss was claiming some indebtedness against the company before Doss made oath to the petition in bankruptcy and after the petition was filed, and that he, having no personal knowledge of the matter, as he had only been president of the company for three or four months, went over the books carefully with the assistance of the other officials who had the books in charge, and discussed the matter with the officer who had been negotiating with Doss, and likewise carefully considered the contract, with the result that he reached the conclusion that the company was not indebted in any amount whatever to Doss at the time the latter made oath to the petition in bankruptcy, and thereupon he himself made oath to the warrant charging Doss with a false statement in claiming in-debtedness of $3,630.87.

It may be easily inferred that Doss, in making oath to the peti-tion in bankruptcy, acted in good faith, honestly believing that because the company had hypothecated notes obtained by him for stock, on which he was entitled to commissions, it owed him such commissions immediately upon the transfer or discount of the notes and without awaiting the payment thereof in cash by the makers. Hence, it may readily be understood why the grand jury of the United States court found no bill on the charge preferred against him, as they doubtless concluded that there was no wrongful intent on his part in claiming under oath that the corporation owed him the sum he contended for, and that he did not knowingly make a false statement. On the other hand, it is clear that the statement made was in fact incorrect, and, in the broad sense of the word, was therefore a "false" statement, as alleged by Woodruff; for plainly, under all the testimony in the case, the corporation, at the time Doss made the oath to the petition in bankruptcy, was not indebted to him in the amount set forth in the petition. This be-ing true, and considering the fact that Woodruff did not recklessly or carelessly act, but apparently made every effort to ascertain, before swearing out the warrant, whether or not the indebtedness claimed by Doss in fact existed, it is evident that there was no want of probable cause for the prosecution instituted by Woodruff.

Woodruff not only conferred with the proper officials connected with the company, but examined the contract under which the dispute arose between the parties, and consulted his attorneys with reference to the matter, before acting; and, under the admissions of Doss, in the extract from his evidence, quoted above, the amount alleged by him to be due by the Interstate Chemical Company was not in fact due at the time he made oath to this allegation, and hence there was probable cause for Woodruff to believe that Doss deliberately made oath to a false statement, with full knowledge of its falsity. If there were any conflict in the testimony on these material issues, then, of course, under the provisions of section 4440 of the Civil Code (1910), the jury would determine whether there was a want of probable cause; and if there was evidence from which they could so determine, this court would be powerless to intervene.

Without extending the discussion or seeking further to amplify the ruling made, it is enough to say that the finding of the jury, that there was no probable cause for the prosecution instituted by Woodruff against Doss, was contrary to law, inasmuch as it is wholly unsupported by the evidence in the case. The judge of the superior court therefore erred in overruling the motion for a new trial.          *Judgment reversed. George and Luke, JJ., concur.*