50934. FRANKLIN LIFE INSURANCE COMPANY v. HILL et al.
50935. SONNE v. HILL et al.

ARGUED SEPTEMBER 8, 1975 — DECIDED SEPTEMBER 25, 1975 —
REHEARING DENIED OCTOBER 15, 1975 — 

*Harris, Watkins, Taylor & Davis, Joseph H. Davis,* for Franklin Life Ins. Co.

*Willis B. Sparks, III,* for Sonne.

*Mincey & Kenmore, Sylvia G. Haywood, David L. Mincey, Harris, Watkins, Taylor & Davis, Joseph H.*

*Davis, Willis B. Sparks, III,* for appellees.

DEEN, Presiding Judge.

■ Sonne complains of the exclusion of certain evidence offered by himself and the witness Brown, a salesman. Brown had accompanied Sonne in one of the latter's efforts to have the warrant sworn out, and was attempting to state reasons given by the detective for not serving the warrants, and his direction to Sonne to go to the district attorney's office. As to Sonne's testimony, following objections to his statements of his general policy in managing the business the judge said, "Let's stick to the issue." Sonne replied: "I'm trying to explain the reason why I signed the warrant" and the court replied, "All right, sir, you can explain why." Sonne then went into a conversation with the detective in which he said merely that he explained his information to Clark and Clark said, "What you're saying there sounds fine," at which the court stated, "Don't go into what he said now." Two other objections were sustained: One to Sonne's testimony that certain people told him they didn't know where Hill was; another to the following statement by Sonne on the ground that it was a self-serving declaration: "I talked to my wife at the time who was an attorney and I said, Jean, I'm very perplexed. I said I've been in this life insurance business with Franklin for five years. I've financed a good number of men and I take into consideration 10% of my income to go off on bad financing. I said but now I'm confronted with the situation to where I have a man who — not just bad financing, I realize that some people don't have the ability to be in the insurance business but I have. . . ."

The appellant now contends that the effect of these rulings was to prevent him from explaining his motives in having the warrants sworn out, in contravention of Code § 38-302 which permits testimony, otherwise objectionable as hearsay, in order to explain conduct and ascertain motive. It is obvious from reading the testimony, given by Sonne without questioning by counsel and by Brown on questioning by Sonne, that the corrective measures used by the court were for the purpose of excluding irrelevant material, either of a hearsay or self-serving character.

The court specifically instructed the defendant that he could explain his motives in signing the warrant; what he attempted to do was to hold the witness to the subject matter at hand. Enumerations 4 through 7 are without merit.

■ Appellant Sonne further complains that the trial judge did not aid him in his presentation of the case by (1) advising him what requirements should be followed in making offers of proof; (2) inquiring as to the materiality and admissibility of tendered testimony; (3) telling him what showing he should make, or (4) advising him to place excluded material in the record to lay a foundation for appeal. In other words, this appellant is complaining because the judge did not try his case for him. A judge may of course give counsel the benefit of his views on the law "[b]ut it is error prejudicial to the opposite party for the court to make suggestions or remarks tending to impress and fortify the positions of one party rather than the other." *Bugg v. State,* 17 Ga. App. 211 (5) (86 SE 405). If this appellant chose to go to trial without counsel, it was not the function of the trial judge to interject himself into the proceedings and try his case for him, generally a hazardous undertaking giving rise to contentions by the opposite party, if he loses, that the court has failed to show the impartiality required by Code § 81-1104.

■ Code § 26-1803 defines theft by deception (the crime charged in Sonne's warrant against Hill) as where one "obtains property by any deceitful means or artful practice with the intention of depriving the owner of said property." It is not clear whether as prosecutor the defendant had in mind fraud against insurance policy buyers by selling them more than they had intended to buy, or fraud against Sonne and the company by misrepresenting the amount he had sold and thus obtaining higher loan credits. The word "deprive" means to withhold property of another either permanently or temporarily. Code § 26-1801 (a). It is questionable, however, that obtaining money in exchange for a demand interest-bearing note would constitute a deprivation to another where there is no evidence that the payee did not honor it or did not intend to pay when the demand was made. An equal ambiguity attaches to the question of

whether the obtention of a contract selling one more than he intended to buy (where the amount appeared correctly in at least one place on the contract at the time it was signed by the buyer) would constitute theft. " 'Ordinarily the existence of probable cause is a question for the jury, but where the material facts are not in dispute, the question becomes one of law for the court. *Woodruff v. Doss,* 20 Ga. App. 639 (93 SE 316); *Tanner-Brice Co. v. Barrs,* 55 Ga. App. 453 [190 SE 676].' *Barber v. Addis,* 113 Ga. App. 806 (2) [149 SE2d 833]." *Morgan v. Mize,* 118 Ga. App. 534 (164 SE2d 565). The burden of showing lack of probable cause was of course on Hill. He proved, among other things, that Sonne would have been liable on his note if he had not paid it; there was an inference that Sonne feared he would not pay because he had severed his connection with the company and gone to work for another employer, and also that Dykes, regional manager of the insurance company, had written a letter to Sonne prior to the service of the warrant in which he said: "Let me know the results of your warrants against Ernie, Gil and Neal. You may have found an answer to collection." At another time Sonne stated his reason for taking out the warrant was because Hill had sullied Franklin's good name. He never discussed the insurance policies with Hill, nor did he discuss the matter with Churchwell, one of the proposed purchasers; thus, he failed to show anything like a complete factual investigation prior to making the affidavit on which the warrant issued. An inference of malice may arise from proof of probable cause, but an inference of probable cause cannot stem from malice. *Bailey v. Century Finance Co.,* 119 Ga. App. 845 (169 SE2d 173). The court might have believed from the evidence that the warrant was taken out not because a theft had been committed but because the prosecutor wanted leverage to collect the note. The evidence does not demand a finding that probable cause for taking out the warrant existed.

■ In addition to the question of whether a finding of malicious prosecution was sustained by the evidence, the co-defendant insurance company contends that in no event could a judgment against it be legally rendered because Sonne was not its agent in the transaction. The

contract between Sonne and Franklin contains a provision that no legal proceeding shall be instituted in the name of the company against any person without prior permission in writing; however it does not appear that this warrant was taken out in the name of the company. It was sworn to on December 15, 1972. There was testimony by Stone, Franklin's general counsel, which was denied by Sonne, that Stone heard of the matter in December and threatened to terminate Sonne's employment if the warrants were not dropped. Sonne wrote that he was doing so on December 23 (the warrant was not in fact served until the following February). At the same time he received the letter from Dykes saying, "You may have found an answer to collection" of the promissory notes for loan advances. In February, Stone heard that a warrant was being served on another salesman, and testified that he stopped this following a conversation with a company vice president by informing Sonne that if the warrants were not dismissed he would fire him. He said nothing further, however, about the Hill warrant.

Sonne's contract designated him general agent in Macon, Georgia, and vicinity for the purpose of procuring applications for insurance. He had power, subject to company approval, to hire subordinates, was paid on a commission basis, changes in which were at the discretion of the company, was subject to termination on 30 days' notice and was required to work solely for Franklin, although if Franklin refused a risk he was then free to place it elsewhere. Any subagent of Sonne was subject to being terminated at the company's pleasure. In company correspondence he was alternately designated a general agent and a regional manager or agency manager. The entire organization is a hierarchy in which each general agent or regional manager supervises and may issue orders to those under him within the territory. Copies of business transactions are kept in and reviewed by the home office. It is clear that by this means the insurer exercised control over the manner and means by which its business was carried on in the various territories and might discharge any individual whose services it deemed unsatisfactory. It is unrealistic to contend that under this

method or organization Sonne was a mere independent contractor for whose actions the company had no responsibility. *American Family Life Assur. Co. v. Welch,* 120 Ga. App. 334 (2) (170 SE2d 703); *Gulf Life Ins. Co. v. McDaniel,* 75 Ga. App. 549 (43 SE2d 784). In *Pilgrim Health & Life Ins. Co. v. McIntosh,* 24 Ga. App. 162 (100 SE 40), quoting from *American Investment Co. v. Cable Co.,* 4 Ga. App. 106 (60 SE 1037) it is stated: "[T]he term 'manager' as applied to a private corporation, indicates one who has the general direction and control of the affair . . . implies agency, control, and presumptively sufficient authority to bind the corporation." Such terms as "general agent" and "regional manager" bear the same connotation.

A malicious prosecution is a tort. Rarely indeed do corporations specifically authorize their agents and servants to commit torts, and Franklin did not do so in this case. But it was within the scope of Sonne's employment to procure insurance for his principal in the area assigned to him, and his decision to prosecute Hill on receiving information that Hill had written insurance policies with premium payments higher than those intended to be authorized by the purchaser related directly to the conduct of the insurance business. "The master is liable for the wilful torts of his servant acting in the prosecution and within the scope of the master's business, and this is true even though the servant, at the time of the commission of such tort, may evidence anger, malice, or ill will." *Frazier v. Southern R. Co.,* 200 Ga. 590 (2) (37 SE2d 774). Further, the fact that Sonne had sworn out the warrant was known to executives of the company shortly after its issuing date of December 15, yet the court could have found that when this defendant discovered the following February that a warrant against another salesman in the same situation was about to be served, and interfered to procure the dismissal of that warrant, it negligently took no action at all to ascertain whether the warrant against Hill was also being activated. With knowledge that the warrants had been issued, and that its agent Sonne had not obeyed prior instructions to dismiss them, together with knowledge that Sonne's contract could be immediately terminated if such action was

deemed in its interest, it delayed and did nothing at all in the matter. Under the old homily about actions speaking louder than words, the court might infer that Franklin's disavowals were for the purpose of use only if things went wrong.

The appellant corporation contends that *Auld v. Colonial Stores,* 76 Ga. App. 329, 340 (45 SE2d 827) and *Newton v. Gulf Life Ins. Co.,* 55 Ga. App. 330 (190 SE 69) demand a contrary disposition of this case. It was there held: "It is not sufficient that the act showed that [the defendant] did it with the intent to benefit or to serve the master. It must be something done in attempting to do what the master has employed the servant to do." Sonne was employed to sell insurance, and he obviously felt that Hill and other salesmen had exhibited behavior which was bad for the insurance business and "sullied Franklin's good name" as he put it. He chose to adopt the corrective measures, not of firing them which he might have done, but of punishing them through the courts. Cases such as *Auld* on the one hand and *Frazier* on the other can only be reconciled by an approach which directs its inquiry, not to authority *to commit the tort* but to authority to *accomplish a purpose* in pursuance of which a wilful tort is committed. Were this merely a case where the agent proceeded unknown to the principal until after the arrest and commitment hearing, we might perhaps reach a different result, but where the company had actual knowledge of the warrant for two months prior to the arrest it is a question that addresses itself to the trier of fact, in this case the judge sitting without a jury, whether its failure to make Sonne understand its contended position that the case should be dropped was by accident or design.

*Judgments affirmed. Evans and Stolz, JJ., concur.*