REECE CORPORATION, demandante y recurrida, *v.* ARIELA, INC., demandada y peticionaria.

*Número:* CE-87-701 *Resuelto:* 30 de junio de 1988

*José M. Biaggi Junquera*, abogado de la peticionaria; *Manuel E. Miranda*, abogado de la recurrida.

EL JUEZ ASOCIADO SEÑOR ALONSO ALONSO emitió la opinión del Tribunal.

Nos expresamos sobre la naturaleza de un contrato mercantil, sobre las facultades inherentes de los gerentes regionales de una corporación y sobre la dación en pago de lo debido.

I

El 5 de diciembre de 1985, Reece Corporation (en adelante Reece) presentó en el Tribunal de Distrito, Sala de Mayagüez, una demanda en cobro de dinero contra Ariela, Inc. (en adelante Ariela), en que le reclamaba la cantidad de $4,037.01 por concepto de deudas surgidas por cánones atrasados de arrendamiento de maquinaria.

La demandada y peticionaria Ariela contestó la demanda y negó la existencia de la deuda. Alegó que había pagado mediante "dación en pago" la cantidad de $3,157.48 en mercancía y el balance adeudado de $879.53 en cheque.

El Tribunal de Distrito concluyó que la demandada y peticionaria no debía nada a la demandante y recurrida, pues había ocurrido una dación en pago. El tribunal encontró probado que la demandante y recurrida —quien se dedica a la venta y arrendamiento de máquinas de costura y de piezas de repuesto— reorganizó su función corporativa en 1980. A raíz de ese proceso de reorganización, Reece le notificó a la demandada y peticionaria, que no le podría arrendar en lo subsiguiente las máquinas de coser, pero que estaba en disposición de vendérselas si ella así lo interesaba.

La demandada y peticionaria —quien se dedica al negocio de fabricación de ropa— le informó al Sr. Kemp House, Gerente Regional de Reece en Puerto Rico, que no estaba en posición de poder comprarle las máquinas de coser y que procedería a devolvérselas. Le señaló, además, que devolvería todas aquellas piezas que había adquirido como reemplazos o repuestos. Dichas piezas estaban en posesión de Ariela, ya que en virtud del contrato de arrendamiento ella venía obligada a darle mantenimiento a las máquinas y a utilizar las mencionadas piezas para conservar la maquinaria en buen estado.

El Tribunal de Distrito concluyó, además, que conforme a un acuerdo logrado entre Ariela y el Gerente Regional de Reece, Ariela le remitió a Reece todas las piezas que estaban en su poder, cuyo valor ascendía a $3,157.48, para saldar con ello parte de la deuda. Conjuntamente, y en cumplimiento del acuerdo, la corporación demandada y peticionaria envió un cheque por la cantidad de $879.33 con el que saldaba la totalidad de la deuda.

El Tribunal de Distrito concluyó que Reece no honró el acuerdo o compromiso que el Sr. Kemp House había efectuado con Ariela. También concluyó que Reece aceptó originalmente el acuerdo de pago, pero que posteriormente lo revocó de forma unilateral y sin explicar las razones para

haber tomado esa determinación. En vista de esos hechos, el tribunal declaró sin lugar la demanda.

El Tribunal Superior, al cual se apeló el dictamen del Tribunal de Distrito, revocó la determinación del Tribunal de Distrito por entender que la demandada y peticionaria debió probar que el Sr. Kemp House, como Gerente Regional de Reece, tenía la facultad para aceptar en dación en pago las piezas devueltas en vez del dinero adeudado. A juicio del Tribunal Superior, *no se había pasado prueba sobre la capacidad del Sr. Kemp House para obligar a la corporación* y, por ello, no se podía concluir que la demandante y recurrida había aceptado como dación en pago el valor de la totalidad de las piezas.

No conforme, Ariela recurre ante nos mediante recurso de *certiorari*.

El 18 de noviembre de 1987 ordenamos a la demandante y recurrida que mostrara causa por la cual no debíamos revocar la sentencia del Tribunal Superior de Puerto Rico, por considerar que el Sr. Kemp House estaba facultado por razón del cargo que ocupaba y por la forma en que lo había desempeñado, para obligar a la corporación en la transacción llevada a cabo.

La demandante y recurrida ha comparecido. En su escrito nos plantea que de haber existido algún contrato entre las partes el mismo tiene que tipificarse como mercantil, en cuyo caso la declaración de testigos no sería suficiente por sí sola para probar la existencia del contrato. Art. 82 del Código de Comercio, 10 L.P.R.A. sec. 1302;[1] *Vila & Hnos.,*

---

[1] En lo pertinente, dispone:

"Serán válidos y producirán obligación y acción en juicio los contratos mercantiles, cualesquiera que sean la forma y el idioma en que se celebren, la clase a que correspondan y la cantidad que tengan por objeto, con tal que conste su existencia por alguno de los medios que el derecho civil tenga establecidos. *Sin embargo, la declaración de testigos no será por sí sola bastante para probar la*

*Inc. v. Owens Ill. de P.R.*, 117 D.P.R. 825 (1986). Señala además la corporación demandante y recurrida que le correspondía a la demandada y peticionaria demostrar que Reece había aceptado la dación en pago propuesta por Ariela.

## II

Comenzaremos discutiendo si constituye un contrato de compraventa mercantil la compra, por parte de Ariela, de piezas de repuesto para el mantenimiento de las máquinas de coser arrendadas por la demandante y recurrida y, de ser ello así, si el acuerdo de aceptación de la oferta de dación en pago logrado entre el Sr. Kemp House y Ariela se convirtió en un contrato de naturaleza mercantil.

■ El Art. 243 del Código de Comercio dispone lo siguiente:

> Será mercantil la compraventa de cosas muebles *para revenderlas*, bien en la misma forma que se compraron, o bien en otra diferente, con ánimo de lucrarse en la reventa. (Énfasis suplido.) 10 L.P.R.A. sec. 1701.

■ Así mismo, el Art. 244(1) dispone que:

> No se reputarán mercantiles:
> (1) Las compras de efectos destinados *al consumo* del comprador o de la persona por cuyo encargo se adquieren. (Énfasis suplido.) 10 L.P.R.A. sec. 1702.

■ El elemento de comercialidad que distingue a la compraventa mercantil de la civil se reconoce principalmente por la intención del comprador. En la compraventa mercantil el comprador es movido por el doble propósito de revender ulteriormente las cosas compradas y de obtener un

---

*existencia de un contrato, cuya cuantía exceda de trescientos dólares, a no concurrir con alguna otra prueba."* (Énfasis suplido.) 10 L.P.R.A. sec. 1302.

lucro. Al faltar esa intención o propósito, la compraventa carece del carácter mercantil que la distingue de la del tráfico civil. R. Uría, *Derecho Mercantil*, 10ma ed., Madrid, Imprenta Aguirre, 1975, pág. 474; J. Garrigues, *Curso de Derecho Mercantil*, 7ma ed. rev., Madrid, Imprenta Aguirre, 1979, Vol. II, pág. 70. Por ello, la compra de maquinaria o de piezas para realizar la producción de una industria es de naturaleza civil, pues el objeto no está destinado a la reventa, sino al consumo o uso por el adquirente.

La jurisprudencia española ha sido consistente en concluir lo anterior en su interpretación de disposiciones análogas a las nuestras. Véanse: S. de 27 de enero de 1945, Núm. 37, IX (2da serie) Jurisprudencia Civil 255; S. de 1ro de julio de 1947, Núm. 51, XIX (Vol. III, 2da serie) Jurisprudencia Civil 540; S. de 7 de junio de 1969, Núm. 3285, 36 (II) Repertorio de Jurisprudencia 2215; S. de 14 de mayo de 1979, Núm. 1828, 46 (I) Repertorio de Jurisprudencia 1487; S. de 21 de diciembre de 1981, Núm. 5280, 48 (II) Repertorio de Jurisprudencia 4240. Así, al analizar un contrato celebrado entre comerciantes y en el cual una de las partes compró maquinaria para la extracción de aceite de oliva, el Tribunal Supremo de España señaló:

> "... [L]a característica esencial de la compraventa mercantil es la intencionalidad del comprador, que ha de ser la de revender las cosas con ánimo de lucro y siendo ello así y referido el contrato debatido a la compraventa de maquinaria para la molturación de la aceituna [. . .], sin ánimo de revender el molino, ni su maquinaria, ni sus piezas para obtener un lucro en la reventa, el contrato debe reputarse compraventa civil y sometido a las reglas del Código sustantivo [civil, claro] . . ." (STS 7-VI-1969 [Rep. Ar 3285/1969]). Sentencia comentada, *Una teoría económica sobre la mercantilidad de la compraventa*, 36 An. Der. Civ. 943, 976 (1983).

Las piezas que le compró Ariela a Reece se utilizarían para el consumo y uso de la propia empresa y no para la

reventa con ánimo de lucro. Es por ello que no podemos calificar dicha transacción efectuada entre las partes como una transacción de carácter mercantil. Tampoco podemos calificar de mercantil el acuerdo logrado entre el Sr. Kemp House y Ariela para aceptar unas piezas como dación en pago, puesto que ese acuerdo tiene su génesis y es secuela de un contrato de naturaleza civil.

■ Por otro lado, el hecho de que las partes contratantes en autos sean ambas comerciantes no convierte el arrendamiento de maquinaria y la venta de piezas en actos mercantiles. Veamos.

■ Hoy, en *Pacheco v. Nat'l Western Life Ins. Co.*, 122 D.P.R. 56, 63 (1988), expresamos que para definir lo que constituye un acto de comercio se han desarrollado teorías objetivas, subjetivas y la "teoría del accesorio", que atribuye "carácter mercantil a los llamados actos de comercio por *relación*". (Énfasis en el original.) Véanse: A. Bergamo Llabrés, *Instituciones de Derecho Mercantil*, Madrid, Ed. Reus, 1951, T. I, págs. 55–56; J.M. Martínez Val, *Derecho Mercantil*, Barcelona, Ed. Bosch, 1979, pág. 24.

■ La teoría subjetiva coincide con lo establecido por el Código de Comercio alemán, que en su Art. 343 define actos de comercio como "'todos "los realizados por un comerciante que pertenezcan a la expl[ot]ación de su industria mercantil'". Martínez Val, *op. cit.*, pág. 24. Dentro de dicho sistema el derecho mercantil es el derecho de una clase de personas: los comerciantes. Mas quedan excluidos del mismo los actos realizados por un comerciante fuera de tal esfera profesional. Íd.; *Pescadería Rosas, Inc. v. Lozada*, 116 D.P.R. 474 (1985).

■ En la teoría objetiva, el derecho mercantil pasa a ser más bien el derecho propio de una clase de actos, los actos de

comercio, los cuales no son únicamente los realizados por los comerciantes en su carácter como tales. Bajo este sistema la atención se traslada de la persona al acto y se desvincula el acto de la persona del comerciante. *Pescadería Rosas, Inc. v. Lozada*, supra; J. Garrigues, *Tratado de Derecho Mercantil*, Madrid, Ed. Rev. Der. Mercantil, 1947, T. I, Vol. 1, págs. 177–178.

Comenta Uría, en cuanto a la definición doctrinal del acto mercantil, que el Código de Comercio español —del cual procede el nuestro— responde a una concepción objetiva del derecho mercantil. Éste se centra principalmente en la naturaleza de los actos o contratos para atribuirles o no la calificación de mercantiles, independientemente de las personas que estuviesen en ellas.

 Al interpretar el Art. 2 del Código de Comercio, 10 L.P.R.A. sec. 1002, hemos destacado que el mismo rechaza la enumeración y la definición doctrinal como criterios para establecer lo que constituye un acto de comercio, y abre un ancho campo a la evolución del concepto conforme a los cambios que ocurran en la realidad económica. *Pescadería Rosas, Inc. v. Lozada*, supra. Dicho artículo alude "por fuerza a dos tipos de actos: los regulados exclusivamente por el Código de Comercio y los reglamentados tanto por éste como por el Código Civil. Este segundo grupo, *al que pertenec[e]. . . la compraventa[,] . . .* destaca con particular rigor las dificultades en la identificación del acto mercantil. Su análisis demuestra que el criterio de diferenciación es en efecto múltiple . . . . [Por ello l]os factores definitorios de la naturaleza, comercial o civil, de una transacción varían de caso a caso. . . . Fuera de los requisitos particulares a distintos negocios existe, no obstante, un hilo conductor, un elemento común entre diversos actos mercantiles: *su finalidad, su conexión con el tráfico mercantil, su habitualidad, su*

*atención al valor permutable de las cosas.*" (Énfasis suplido.) *Pescadería Rosas, Inc. v. Lozada,* supra, pág. 479.

El criterio fundamental que debe tenerse presente es que el derecho mercantil es el derecho propio de una clase de actos. Aun en el sistema de naturaleza más subjetivo, se tiene que partir del acto para saber quiénes son los comerciantes. De ahí que no pueda existir un acto de comercio meramente porque lo realice un comerciante. Garrigues, *Tratado de Derecho Mercantil, op. cit.,* págs. 177–178.

En el caso que nos ocupa, una evaluación de las transacciones realizadas entre las partes nos demuestra que en autos no está presente ninguno de los contratos tipificados en el Código de Comercio como contratos mercantiles. Por consiguiente no podemos adscribirle carácter mercantil a las transacciones realizadas entre la demandada y peticionaria y la demandante y recurrida por el solo hecho de que ambos sean comerciantes. Ello conllevaría que adoptásemos una norma bajo la cual calificaríamos como mercantil a todo acto en el que, con independencia de su naturaleza substantiva, intervinieran dos (2) comerciantes.

Tampoco debemos pasar por alto la norma adoptada por este Tribunal en términos de que aquella parte que invoca la aplicabilidad del Código de Comercio a la controversia tiene el peso de la prueba sobre su aplicabilidad. *Pescadería Rosas, Inc. v. Lozada,* supra. La demandante y recurrida de autos no ha cumplido con este requisito. Surge, además, de los autos que fue en la apelación al Tribunal Superior cuando planteó por primera vez la aplicabilidad del Código de Comercio a la controversia y la supuesta naturaleza mercantil de las transacciones realizadas entre las partes.

## III

La demandante y recurrida argumenta, en segundo lugar, que el Gerente Regional de Reece, Sr. Kemp House, no tenía autoridad para obligar a la corporación mediante el acuerdo logrado entre las partes y que el propio señor House había condicionado la devolución de las piezas como crédito, a la aceptación de las mismas por el Sr. Clark Blair, quien era Director Regional de Reece.

Luego de un examen cuidadoso de la prueba documental presentada en autos, así como de la misma transcripción de la vista del caso celebrada ante el Tribunal de Distrito de Puerto Rico, que tuvo ante sí el Tribunal Superior, concluimos que el señor House como Gerente Regional de Reece y Ariela llegaron a un acuerdo, en el cual Reece aceptaría como dación en pago las piezas que Ariela había devuelto y que la cantidad adeudada restante sería pagada en cheque. Una vez que se logró este acuerdo, Reece lo revoca de forma unilateral sin divulgar las razones que tuvo para ello.

No existe controversia alguna en cuanto al hecho de que el Sr. Kemp House ocupaba la posición de Gerente Regional de Reece en Puerto Rico y que tenía a su cargo los negocios de la corporación dentro de Puerto Rico. Apéndice, pág. 62. El señor Ades, quien se desempeñó como Presidente de Ariela al momento de celebrarse la transacción controvertida, testificó durante el juicio que el Sr. Kemp House era el representante de Reece en Puerto Rico. Así mismo indicó que todos los negocios que realizaba su corporación con Reece se negociaban con el señor House. Apéndice, pág. 87.

Ahora bien, ¿tenía el Sr. Kemp House, como Gerente Regional de Reece, la autoridad para realizar las distintas transacciones logradas entre las partes y que dieron lugar a la controversia de autos? Concluimos que sí.

*En ausencia de documentos corporativos* o de otra índole que definan con precisión los poderes y la autori-

dad de un gerente general, se entiende que éste tiene como norma general la autoridad implícita para llevar a cabo aquellas funciones que se enmarcan dentro del ámbito de los asuntos ordinarios de la corporación. 2A *Fletcher Cyc. Corp.* Sec. 667 (Perm. ed. 1982); H.G. Henn y J.R. Alexander, *Laws of Corporations and Other Business Enterprises*, 3ra ed., Minnesota, West Publishing Co., 1983, págs. 599–600; *Maple Island Farm v. Bitterling*, 209 F.2d 867 (8vo Cir. 1954). El cargo conlleva la concesión de aquel grado de autoridad apropiada para la realización de los actos necesarios para la dirección adecuada de los negocios corporativos. *Fletcher*, supra. Además de la autoridad expresamente delegada, los gerentes corporativos pueden poseer una autoridad implícita, ya sea por la naturaleza de sus posiciones o por la manera en que los negocios de la corporación han sido conducidos en el pasado. R. Hamilton, *The Law of Corporations in a Nutshell*, Minnesota, West Publishing Co., 1983, pág. 185.

▮ Numerosas corporaciones tienen gerentes generales designados bajo el título de Gerente General y Gerente Regional. Henn y Alexander, *op. cit.*, pág. 587; *Fletcher*, supra, Vol. 2, Sec. 272; *Sun Printing & Publishing Assn. v. Moore*, 183 U.S. 642 (1902). En ese sentido se ha sostenido que el término *"gerente regional" tiene una connotación similar a "gerente general".* Se entiende que el gerente regional es aquella persona que tiene la dirección y el control de los asuntos corporativos en una región y que posee suficiente autoridad como para comprometer a la corporación en el ámbito de los negocios ordinarios de ésta. *Franklin Life Ins. Co. v. Hill*, 220 S.E.2d 707 (Ct. App. Ga. 1975). La diferencia básica entre el gerente general de una corporación y el gerente de un distrito o región reside en que el último ostenta una autoridad que recae sobre una parte o sección específica del negocio. *Fletcher*, supra, Vol. 2A, Sec. 666.

La corporación que le encomienda a un gerente la supervisión general de una división o sección de su negocio, en ausencia de documentación en contrario, reviste a dicho gerente con aquellas prerrogativas de gerencia general coexistentes con el negocio u operaciones que se le han confiado. Por ello, la corporación queda obligada por los contratos que éste hiciera dentro de los parámetros de su autoridad. *Fletcher*, supra, Vol. 2A, Sec. 670. De esta manera, el gerente de división de una corporación manufacturera tiene la autoridad implícita para realizar aquellos contratos dirigidos a la venta de productos sin la necesidad de referir las órdenes de compra a la oficina central de la corporación, máxime cuando en acuerdos o contratos previos entre esas mismas partes nunca se requirió la ratificación del contrato por la corporación. *Fletcher*, supra, Vol. 2A, Sec. 670; *F.W. Stock & Sons v. Owen & Barker*, 105 S.E. 587 (Ct. App. Va. 1921).

Ahora bien, la autoridad de un gerente corporativo se extiende a aquellas materias o transacciones que son incidentales a los asuntos ordinarios de una corporación. *Fletcher*, supra, Vol. 2A, Sec. 667. En el momento en que un gerente general tiene ante sí un asunto extraordinario, necesitaría la autorización de los organismos corporativos u oficiales correspondientes para comprometer a ésta. De no tener el gerente esa autorización, estaría actuando fuera del ámbito de su autoridad implícita. *Porshin v. Snider*, 212 N.E.2d 216 (Mass. 1965).

Cuando el Sr. Kemp House arrendó a Ariela las máquinas de coser y le vendió las piezas de repuesto, estaba llevando a cabo unas transacciones ordinarias de la operación corporativa, *T.M. Gilmore & Co. v. W.B. Samuels & Co.*, 123 S.W. 271 (Ct. App. Ky. 1909), para las que nunca necesitó de la autorización de la Junta de Directores de la Corporación. Por ello, podía recibir el pago de los cánones de arrenda-

miento y el valor de las piezas compradas por Ariela sin necesidad de autorización de la Junta de Directores, pues se trataba igualmente de transacciones ordinarias.

## V

Íntimamente relacionado con lo anterior, cabe preguntarse si el recibo de unas piezas devueltas como dación en pago constituyó un acto ordinario de los negocios corporativos que pudiera realizar el Sr. Kemp House. Concluimos que sí.

■ La dación en pago es el acto en virtud del cual el deudor voluntariamente realiza, a título de pago, una prestación distinta a la debida al acreedor, quien consiente en recibirla en sustitución de aquélla. J. Castán Tobeñas, *Derecho Civil español, común y foral*, 10ma ed., Madrid, Ed. Reus, 1967, T. III, pág. 317. La ejecución de la nueva prestación convenida implica la extinción de la obligación preexistente. J. Puig Brutau, *Fundamentos de Derecho Civil*, 3ra ed., Barcelona, Ed. Bosch, 1985, T. I, Vol. 2, pág. 324.

■ La dación en pago tiene su fundamento en el hecho de que nada impide que el acreedor y el deudor se pongan de acuerdo para que el pago pueda verificarse mediante una prestación distinta a la acordada originalmente. Puig Brutau, *op. cit.*, pág. 320.

■ Esta figura jurídica se distingue de la cesión de bienes, pues en la dación no se exige la intervención de pluralidad de acreedores ni necesita extenderse a todos los bienes del deudor. Tampoco se fundamenta en el supuesto de una situación de insolvencia por parte del deudor, puesto que únicamente supone un convenio que modifica la obligación primitiva, sustituyendo su objeto, pero cumpliéndola voluntariamente. J.M. Manresa y Navarro, *Comentarios al Código Civil Español*, 6ta ed. rev., Madrid, Ed. Reus, 1967,

T. VIII, Vol. 1, pág. 705; Castán Tobeñas, *op. cit.*, pág. 319; J.R. Vélez Torres, *Curso de Derecho Civil*, San Juan, Ed. Art Printing, 1981, T. IV, Vol. 1, pág. 153.

██ Por ser la dación en pago un acto en virtud del cual el deudor, con el consentimiento del acreedor, realiza un pago distinto al acordado originalmente, el mismo constituye un acuerdo de naturaleza ordinaria.

Si el Sr. Kemp House estaba facultado para vender mercancía y recibir el pago por ella, también podía aceptar unas piezas devueltas y un cheque como pago total sin la necesidad de una previa autorización de parte de la Junta de Directores de la corporación de la cual era Gerente Regional, particularmente en este caso en que las piezas o los repuestos para la maquinaria no iban a tener utilidad alguna, pues dicha maquinaria no se le arrendaría más. La compra de las piezas de repuesto era una obligación incidental a la obligación principal del arrendamiento. Sin la última, la primera no tenía justificación.

Por ser el acuerdo logrado entre las partes un acto de naturaleza ordinaria, y haberse llevado a cabo en el pasado transacciones similares, el mismo obliga a la corporación. Por ello, el señor Ades (Presidente de Ariela) tenía el derecho de suponer que estaba contratando con una persona que gozaba de la autoridad para obligar con sus actos a la corporación Reece. *Fletcher*, supra, Vol. 2A, Sec. 667.

En el caso de autos abona a dicha presunción el hecho de que la corporación nunca cuestionó las actuaciones corporativas realizadas en el pasado por el Sr. Kemp House, en su calidad de Gerente Regional, ni le indicó al demandarlo las limitaciones de la actividad corporativa de éste. *Fletcher*, supra, Vol. 2A, Sec. 670.

## VI

Nos resta por considerar el planteamiento de la demandante y recurrida en el sentido de que le correspondía pro-

bar a la corporación demandada y peticionaria las facultades intrínsecas del cargo de Gerente Regional, así como la capacidad corporativa del señor House para aceptar las piezas devueltas en "dación en pago".

Ante el Tribunal de Distrito los propios representantes de la corporación Reece admitieron que el Sr. Kemp House se desempeñaba, para el tiempo en que se gestó la transacción de autos, como Gerente Regional de la corporación en Puerto Rico.

Le correspondía entonces a la demandante y recurrida probar que el Sr. Kemp House no estaba facultado para aceptar la dación en pago y que tampoco poseía las facultades típicas que se le adscriben a un agente corporativo que ostente la posición de Gerente Regional, cosa que no hizo.

 Hemos sostenido que la obligación de presentar evidencia recae principalmente sobre la parte que sostiene la afirmativa en la cuestión en controversia.(2) Meras alegaciones o teorías no constituyen prueba. *Asoc. Auténtica Empl. v. Municipio de Bayamón*, 111 D.P.R. 527 (1981).

Reece se limitó a presentar unos testigos que no tenían conocimiento directo de la negociación original entre Reece y Ariela. *Tampoco presentó como testigo al Sr. Kemp House* para refutar el acuerdo logrado con Ariela.

Por los fundamentos expuestos, *se expide el auto y se revoca la sentencia dictada el 14 de septiembre de 1987 por el Tribunal Superior, Sala de Mayagüez, en el caso CS-87-35 y se reinstala la del Tribunal de Distrito de 15 de diciembre de 1986.*

El Juez Asociado Señor Rebollo López no intervino.

---

(2) Regla 10(B) de Evidencia de 1979 (32 L.P.R.A. Ap. IV).