# 97 DTA 143

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL II-BAYAMON
## PANEL I

DAVID GONZALEZ SANTIAGO, ET. ALS.
Demandantes-Apelantes

v.

POLICIA DE PUERTO RICO, ET. ALS.
Demandados-Apelados

Núm. KLAN-95-00751

San Juan, Puerto Rico, a 23 de junio de 1997

Panel integrado por su Presidenta, la Jueza Ramos Buonomo
y los Jueces Ortiz Carrión y Cordero

Cordero, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Los apelantes, Sr. David González Santiago y otros, (en adelante, todos llamados bajo el nombre singular de *"González"),* nos solicitan mediante recurso de apelación, la revisión de la sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Bayamón, mediante la cual se desestimó su reclamación civil en daños y perjuicios.

En síntesis, cuestiona González el que se desestimara su causa de acción al amparo de la Regla 39.2(c) de Procedimiento Civil, 32 L.P.R.A. Ap. III, al determinarse que no pusieron al tribunal en condiciones de poder hacer una determinación clara y específica sobre negligencia, y en segundo lugar, que el tribunal no admitiera en evidencia el informe preparado por la División de Investigaciones Administrativas de la Policía de Puerto Rico.

Por los fundamentos adelante expuestos, no erró el tribunal en su dictamen y procede la confirmación de la sentencia.

Los hechos y procedimientos que anteceden a la controversia son los siguientes.

La parte apelante la componen el ex-esposo, Sr. David González Santiago, y las dos hijas, Yanitza M. González Rivera y Yomaira I. González Rivera, de la Sra. Nilsa Rivera Rodríguez.

La señora Rivera trabajó para la Policía de Puerto Rico como retén en el cuartel del pueblo de Barranquitas. El señor José M. Padilla Vega *("Padilla")* ayudaba voluntariamente, y de manera gratuita, en dicho cuartel lavando los automóviles de la policía. Mientras asistía en dichas labores de mantenimiento, el señor Padilla acostumbraba utilizar un mameluco o traje de faena con insignias oficiales de la policía. También regularmente portaba un arma de fuego para la cual ostentaba una licencia de portación fraudulenta.

El señor Padilla era amigo de la señora Rivera y acostumbraba visitarla en su hogar. Según declaración jurada prestada por una de las hijas de la señora Rivera, el 13 de mayo de 1990 el señor Padilla visitó a su madre. Estando las hijas en el interior de la residencia y su madre con el señor Padilla en el balcón de la misma, las hijas escucharon disparos y se escondieron en un closet. El cadaver de la señora Rivera fue encontrado en el balcón de su casa mostrando varios impactos de bala.

Posteriormente, se encontró causa probable para arresto contra el señor Padilla por la muerte de la señora Rivera. Sin embargo, cuando la policía procedió a efectuar el arresto, el señor Padilla se suicidó de un disparo al cuello.

Así las cosas, González presentó demanda en daños y perjuicios contra el Estado Libre Asociado de Puerto Rico, la Policía de Puerto Rico y varios policías alegando que la muerte de la señora Rivera ocurrió por causa de la negligencia de los oficiales y agentes del cuartel de la policía de Barranquitas al no prever que el señor Padilla, quien alega era perturbado mental, pudiera ocasionar un daño con su arma y por tanto no desarmarlo, y además permitirle trabajar en el cuartel en tareas de mantenimiento utilizando un mameluco con insignias oficiales sin ser empleado de la Policía.

Durante el juicio en su fondo y tras desfilar la prueba de la parte demandante, los demandados solicitaron la desestimación de la acción bajo la Regla 39.2(c), alegando que la evidencia presentada por González no probó la negligencia de los policías del cuartel de Barranquitas. El tribunal *a quo,* mediante la sentencia apelada, coincidió con dicho análisis y desestimó la reclamación. Contra dicho dictamen González interpuso la presente apelación, bajo los señalamientos de errores previamente reseñados y discutidos más adelante.

Considerados los planteamientos de las partes, los documentos sometidos y el derecho aplicable, concluimos que a González no le asiste la razón.

## II

En primer lugar, cuestiona González el que se desestimara su causa de acción en daños y perjuicios al amparo de la Regla 39.2(c) de Procedimiento Civil. Alega que erró el tribunal al determinar que no

presentó prueba para permitir una determinación clara y específica sobre negligencia.

González alega que medió negligencia de parte de los policías del cuartel de Barranquitas y que ésta causó el daño. Basan su reclamación en la supuesta negligencia de los policías en dos áreas; (1) al permitir que el señor Padilla portara un arma de fuego siendo un perturbado mental, y para la cual no tenía autorización; y (2) en que se permitiera al señor Padilla trabajar en el cuartel, en labores de mantenimiento, utilizando un mameluco con insignias oficiales sin ser empleado de la Policía.

El inciso (c) de la Regla 39.2 permite que en aquellos casos en que el tribunal determine, previa solicitud de la parte demandada, que bajo los hechos probados por la parte demandante, ésta no tiene derecho a la concesión de remedio alguno, el tribunal dicte sentencia desestimatoria en contra de la parte demandante.

El Tribunal Supremo al interpretar dicho inciso ha expresado que una vez presentada la prueba de la parte demandante y solicitada por la otra parte la desestimación al amparo de la anterior regla, el tribunal está autorizado a aquilatar la prueba presentada y formular su apreciación de los hechos según la credibilidad que le haya merecido la prueba ante sí. *Romero Arroyo v. E.L.A.,* ___ D.P.R. ___ (1995), **95 J.T.S. 158**, pág. 362.

La prueba presentada por la parte demandante (aquí apelantes), consistió del testimonio del Sr. David González Santiago, uno de los apelantes y ex-esposo de la difunta señora Rivera, el testimonio del perito criminólogo Onofre Jusino y prueba documental consistente en cartas de orientación dirigidas por el Superintendente de la Policía a varios oficiales del cuartel de Barranquitas. Veamos las dos áreas de negligencia aludidas.

De una parte González alega, como primer señalamiento de negligencia, que el señor Padilla era perturbado mental y que los policías del cuartel de Barranquitas tenían conocimiento de ello y no lo desarmaron. Sin embargo, la prueba que presentaron no estableció que el señor Padilla padecía de sus facultades mentales y menos aún que los policías tuvieran conocimiento de ello. Asimismo lo entendió el tribunal *a quo*. Véase Apéndice al Escrito de Apelación, exhibit 1, págs. 7-8.

La mera alegación de que el señor Padilla era un perturbado mental a todas luces resulta insuficiente. González debió presentar prueba preponderante de la alegada perturbación mental y del conocimiento específico que sobre esto le imputan a los policías. En ausencia de dicha prueba no es posible concluir que los policías fueron negligentes en el desempeño de su deber, y que debieron desarmar al señor Padilla por el riesgo que representaba armado para terceros. Todo lo contrario, los incisos (15) y (32) de la Regla 16 de Evidencia, 32 L.P.R.A. Ap. IV, nos obligan a presumir lo opuesto. ▋ Valga señalar al respecto, que el señor Padilla ostentaba una licencia de portación, que aunque fraudulenta, no tenía apariencia de ello, y se vino a descubrir luego de ocurridos los hechos. A González le correspondía el peso de la prueba para demostrar la alegada negligencia y el nexo causal. Regla 10 de Evidencia, 32 L.P.R.A. Ap. IV; *Ortiz Torres v. K & A Developers, Inc.,* ___ D.P.R. ___ (1994), **94 J.T.S. 78**, pág. 11992; *Reece Corp. v. Ariela, Inc.,* 122 D.P.R. 270, 286 (1988).

Tampoco encontramos que el tribunal apelado haya actuado con pasión, prejuicio o parcialidad, ni haya cometido error manifiesto en su apreciación de la prueba presentada por la parte demandante; por tanto no intervendremos a nivel apelativo con su apreciación. *Pueblo v. Rivera Nazario,* ___ D.P.R. ___ (1996), **96 J.T.S. 147**, pág. 324; *Quiñones López v. Manzano Pozas,* ___ D.P.R. ___ (1996), **96 J.T.S. 95**, pág. 1305.

Con respecto al segundo señalamiento de negligencia, González alude al hecho de que se permitiera al señor Padilla trabajar en el cuartel sin ser empleado como causa del daño sufrido, es decir, la muerte de la señora Rivera. Tampoco tiene razón.

El artículo 1802 de nuestro Código Civil, 31 L.P.R.A. sec. 5141, establece los tres requisitos necesarios para cualquier acción basada en responsabilidad civil extracontractual. Es necesario que concurran una conducta culposa o negligente, que se sufra daños y que exista una relación causal suficiente en derecho entre dicho acto culposo o negligente y el daño sufrido. Por tanto, la anterior disposición prescribe como elemento indispensable de dicha causa de acción el que exista relación

causal.

No toda causa física se reputa causa suficiente en derecho que de lugar a responsabilidad civil extracontractual. El concepto de causa legal o causa suficiente en derecho establece cuáles actuaciones de las que intervinieron en la cadena de causalidad física de un resultado dañoso obligarán jurídicamente a sus autores a indemnizar al perjudicado por el daño sufrido.

Para las acciones civiles derivadas de la culpa o negligencia rige el criterio de la causalidad adecuada. Bajo dicho criterio será causa suficiente en derecho aquella que, según la experiencia general, de ordinario produce el daño. *Soto Cabral v. E.L.A.,* \_\_\_ D.P.R. \_\_\_ (1995), **95 J.T.S. 49,** pág. 816; *Jiménez v. Pelegrina Espinet,* 112 D.P.R. 700, 704 (1982). Siendo así, será causa adecuada aquella acción u omisión que por sí misma es capaz normal o regularmente, conforme la experiencia o el curso normal de los acontecimientos, de producir el daño en cuestión o de la clase dada. *Soto Cabral v. E.L.A., supra; Sepúlveda de Arrieta v. Barreto Domínguez,* \_\_\_ D.P.R. \_\_\_ (1994), **94 J.T.S. 158,** pág. 548.

En virtud del derecho antes esbozado, resulta imposible validar la alegación de que el daño sufrido, la muerte de la señora Rivera, fue una consecuencia del supuesto segundo acto negligente cometido por los policías del cuartel de Barranquitas, al permitir que el señor Padilla trabajara en las labores de limpieza de los automóviles sin ser empleado y utilizando un mameluco con insignias oficiales.

Hemos mencionado que para concluir que determinado acto u omisión es causa adecuada o causa suficiente en derecho, el daño sufrido tiene que aparecer como consecuencia ordinaria de dicho acto u omisión. No es posible concluir que el permitir que una persona, que no es empleado de la Policía, trabaje en labores de mantenimiento utilizando un mameluco con insignias oficiales, de ordinario es causa adecuada de la clase de daño aquí alegado. Es decir, que de ordinario o regularmente éste produce dicho resultado.

El hecho de que se pueda considerar negligente el que se le permitiera al señor Padilla entrar a las facilidades del cuartel y utilizar un mameluco con insignias oficiales no da lugar a una determinación automática de responsabilidad civil extracontractual. Es necesario que exista relación causal entre esta alegada negligencia y el daño sufrido. Aquí no se configura la misma.

Los hechos alegados no sustentan relación alguna entre la supuesta conducta negligente de los policías y la consecuencia de responsabilidad civil reclamada basada en la muerte de la señora Rivera. Los demandados no podían tener conocimiento previo de las intenciones de Padilla en darle muerte a la señora Rivera. De hecho, siendo Padilla amigo de la señora Rivera y acostumbrado a visitar a ésta en su casa, si alguien sabía, debía saber o sospechar que Padilla podía causar algún problema, lo era ella. Sin embargo, no hay evidencia alguna de que la señora Rivera se hubiese quejado de la conducta de Padilla, o que éste estaba utilizando una licencia de portar arma que luego resultó ser fraudulenta.

Aun bajo el entendido de que los policías del cuartel de Barranquitas actuaron en este segundo aspecto negligentemente, no procede una causa de acción en daños y perjuicios en contra de ellos ante la clara ausencia de nexo causal entre la negligencia alegada y el daño sufrido. Téngase presente que el hecho que se viole una ley o reglamentación no envuelve la existencia, sin más, de responsabilidad civil extracontractual. Es obligatorio que exista nexo causal entre dicha violación y el daño causado. *Negrón García v. Noriega Ortiz,* 117 D.P.R. 570, 574-75 (1986).

Antes de finalizar conviene señalar la referencia hecha por González a los casos *Negrón v. Orozco Rivera,* 113 D.P.R. 712 (1983) y *Hernández v. E.L.A.,* 116 D.P.R. 293 (1985), como precedentes sobre lo dispuesto en relación a la omisión negligente de la Policía al no prever un daño y no desarmar a miembros de la fuerza policíaca. Ambos casos resultan claramente distinguibles del caso del epígrafe.

En el primero, la omisión negligente consistió en no desarmar a un miembro de la Policía que luego de un altercado con otra persona, se encuentra con ella en el cuartel cuando ambos acudieron a informar de lo sucedido, y como resultado de un segundo incidente ocurrido en el cuartel, el policía utilizó su arma de reglamento y le disparó a esta persona hasta ocasionarle la muerte. Es clara la distinción en los hechos de este caso y sobre los cuales el Tribunal Supremo basó su determinación de

responsabilidad. En dicho caso, la responsabilidad se basó en la previsibilidad de un posible daño ante la discordia y cólera del momento. Específicamente, en relación a la omisión negligente el Tribunal Supremo expresó:

*"Conocida la tirantez y hostilidad, y el estado de ánimo entre ciudadano y policía generados por el **encuentro acabado de ocurrir y que se manifiestan vivas en el propio cuartel,** era enteramente previsible para el hombre común,..., una nueva explosión de violencia entre estas personas y la posibilidad de que el único armado de ellos respondiera a la provocación a tiros." Negrón v. Orozco Rivera, supra,* págs. 716-17 (Cita omitida y énfasis suplido.)

En el segundo de los casos, la omisión negligente de la Policía consistió en no despojar de su arma de reglamento a un miembro de la uniformada bajo tratamiento psiquiátrico, para quien el psiquiatra de la Policía había específicamente recomendado dicha acción. En este caso la determinación de responsabilidad se basó en el pleno conocimiento que tenía la Policía del estado emocional del miembro de la uniformada y que siendo ello así era enteramente previsible que éste hiciera mal uso de su arma de reglamento. En el caso ante nos, no fueron establecidos ni la alegada perturbación emocional del señor Padilla ni el conocimiento de la Policía de dicho estado.

La prueba presentada por la parte demandante fue insuficiente para probar un caso y, en consecuencia, sostenemos que actuó correctamente el Tribunal de Primera Instancia al desestimar la demanda. Un análisis de la misma claramente demuestra insuficiencia de prueba para establecer la negligencia de los policías según alegada en el aspecto de no desarmar al señor Padilla y ausencia de relación causal entre la negligencia alegada consistente en permitir a éste el laborar en el cuartel de Barranquitas y el daño sufrido, la muerte de la señora Rivera.

## III

En segundo lugar, cuestiona González que el tribunal no admitiera en evidencia el informe preparado por la División de Investigaciones Administrativas de la Policía de Puerto Rico. Alega que el tribunal erró al no admitirlo por razón de no encontrarse presente la persona que preparó dicho informe. Expresa que dicho informe es admisible por ser un documento público y goza a su vez de autenticación *prima facie*. Aduce, además, que de haber sido admitido en evidencia, la determinación del juez de instancia hubiese sido distinta.

La Regla 5 de Evidencia, 32 L.P.R.A. Ap. IV, regula lo referente al efecto de un error en la exclusión de evidencia. Dispone lo siguiente:

*"No se dejará sin efecto una determinación de exclusión de evidencia ni se revocará sentencia o decisión alguna por motivo de exclusión errónea de evidencia a menos que:*

*(1) La evidencia fue erróneamente excluida a pesar de que la naturaleza, propósito y pertinencia de la misma fue traída a la atención del tribunal mediante una oferta de prueba o por cualquier otro modo, y*

*(2) el tribunal que considera el efecto de la exclusión errónea entiende que ésta fue factor decisivo o sustancial en la sentencia o decisión cuya revocación se solicita."*

La doctrina establecida por dicha regla se conoce como la *"doctrina del error perjudicial"*. El criterio, pues, para determinar si un error, al excluir evidencia pertinente, conlleva la revocación, es concluir que de haberse admitido la evidencia probablemente el resultado hubiese sido distinto.

En cuanto al primer inciso de la anterior regla, a pesar de que del expediente en apelación nos es imposible determinar si la naturaleza, propósito y pertinencia de la prueba excluida fue traída a la atención del tribunal, los mismos se desprenden del contexto de su presentación y por ello nos es posible pasar juicio sobre la misma en apelación. *Pueblo v. Franceschini Sáez,* 110 D.P.R. 794, 797-98 (1981). Un análisis del contexto en que se presentó el informe aludido nos lleva a concluir que el mismo pretendía probar la alegada negligencia de los oficiales del cuartel de Barranquitas.

En cuanto al segundo inciso, el mismo prohibe el que se deje sin efecto una determinación de

exclusión de evidencia a menos que el tribunal estime que dicha exclusión tuvo un efecto decisivo en la determinación cuya revocación se solicita.

El informe en cuestión fue preparado como resultado de una investigación administrativa llevada a cabo por la División de Investigaciones Administrativas e Inspecciones del área de Caguas en contra de varios miembros de la uniformada adscritos al distrito de Barranquitas y a raíz de la muerte de la señora Rivera.

Con respecto a la alegada negligencia de los policías nada nuevo abona el referido informe. En primer lugar, el mismo claramente establece en sus conclusiones que no quedó establecido que el señor Padilla fuera un paciente siquiátrico. Sólo hace referencia a que éste alegaba ser veterano de Vietnam y mostraba en ocasiones una actitud nerviosa. Por otro lado, en el informe sí se reconoce que el señor Padilla utilizaba una autorización falsificada para portar armas.

En segundo lugar, si bien es cierto que en dicho informe se reconoce la negligencia de los policías del cuartel de Barranquitas al permitirle al señor Padilla laborar en dicho cuartel sin ser empleado, ante lo expresado sobre la ausencia de nexo causal entre dicha negligencia y el daño sufrido, sostenemos que esta prueba no causaría que la determinación de responsabilidad tomada por el Tribunal de Primera Instancia fuera distinta. El Tribunal de Primera Instancia no comete error al no admitir en evidencia un informe de la policía cuando la información contenida en dicho informe es claramente de referencia. *Pueblo v. Garay*, 105 D.P.R. 86, 90 (1976).

Finalmente, sostenemos que el efecto de excluir como evidencia el referido informe no fue un factor decisivo o sustancial en el resultado de la sentencia apelada, por lo que no procede la revocación.

La conclusión a la que hemos llegado torna en innecesaria toda discusión sobre la admisibilidad de la prueba excluida. *Pueblo v. Franceschini Sáez, supra*, pág. 799.

### IV
En virtud de todo lo anterior, se dicta sentencia confirmando la dictada por el Tribunal de Primera Instancia.

Lo acuerda y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIO 97 DTA 143**

**1.** En lo pertinente la Regla 16 dispone:

Las presunciones son aquellas establecidas por ley o por decisiones judiciales. Entre las presunciones controvertibles se reconocen las siguientes:

.....

*"...15. Que los deberes de un cargo han sido cumplidos con regularidad.*

.....

*.32. Que la ley ha sido acatada."*