# 2006 DTA 61

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**REGIÓN JUDICIAL DE BAYAMÓN**
**PANEL VIII**

NORMA AGUASVIVAS DARMANIN
Demandante-Recurrida

v.

ESTACIONAMIENTO NATAL HERMANOS CORP., SAN PATRICIO OFFICE CENTER; COMPAÑÍAS A, B Y C Y FULANO DE TAL
Demandados-Peticionarios

Núm. KLCE-2006-00107

San Juan, Puerto Rico, a 28 de marzo de 2006

Panel integrado por su Presidente, el Juez Arbona Lago, el Juez Miranda De Hostos y la Juez Pabón Charneco

Arbona Lago, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El 13 de octubre de 2003, la Sra. Norma Aguasvivas Darmanin (Sra. Aguasvivas), instó acción judicial ante el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI), contra la parte demandada del epígrafe (Natal) en reclamo de *quántum* reparador por los daños y perjuicios por ella sufridos el 18 de agosto de 2000, al caer al pavimento cuando pisó un riel de metal que sirve de guía al portón metálico que controla el acceso y egreso del estacionamiento vehicular del San Patricio Office Center. De tal forma reclamó la suma total de $100,000.00 por la fractura de la mano izquierda y traumas en la cabeza y espalda.

Natal contestó negando responsabilidad por el accidente. Entre sus defensas afirmativas expuso:

" *[...]*

*2. El accidente que se alega en la demanda, de haber ocurrido, se debió a la propia negligencia de la parte demandante al no ejercer el debido cuidado que se espera de una persona prudente y razonable.*

*3. La condición de peligrosidad a la cual se le atribuye el accidente es visible y apreciable a distancia y sin mucho esfuerzo por lo que debe imputársele el accidente ocurrido a la propia negligencia y descuido de la parte demandante al no percatarse de la existencia de la referida condicion. [...]*

*[...]*

*5. La existencia de un riel de metal para el uso del portón de entrada del estacionamiento no es fuente de responsabilidad civil según la jurisprudencia de nuestro Tribunal Supremo.*

*[...]*".

El 21 de febrero de 2002, Natal depuso a la Sra. Aguasvivas y de ello consta claramente que el accidente

ocurre cuando la demandante intentó accesar al edificio de estacionamiento vehicular (parking) luego de visitar la oficina de inmigración que allí radica. Al concluir su gestión en dichas oficinas, la dama no advirtió que muy cerca existe una puerta que conecta del interior del edificio de oficinas al estacionamiento vehicular integrado en la misma estructura, por lo que luego de salir al exterior del edificio intentó accesar al estacionamiento vehicular por la rampa exterior que sólo sirve de acceso y egreso vehicular, controlada por un portón de tubos de metal que corre sobre un riel (guía) sobre el pavimento. Dicha rampa está diseñada para exclusivo uso vehicular y no invita ni provee facilidad alguna para uso peatonal.

Conforme señala la propia parte demandante bajo juramento, en la deposición tomada el 21 de febrero de 2002, no fue hasta fecha posterior en que regresó al edificio para tomar fotos del área, que notó de la existencia de acceso directo peatonal entre el edificio de oficina y cada piso del *"parking"* adjunto.

La caída ocurre cuando al pasar sobre el riel, en un momento en que el portón de tubos de metal permanece momentáneamente abierto, la demandante aprovecha para entrar, calcula mal y cuando cree que le pasa por encima, realmente tropezó con el riel de metal y cae al pavimento.

*"[...]*

*P    Okey. Pero usted hizo un esfuerzo para evitar tropezar con eso, ¿verdad?*

*R    Pues sí, pues claro que sí, porque cuando yo voy caminando, yo sinceramente no, de lejos no alcancé a ver el, lo grande que era, sino vi que de eso, y lo que traté fue de pisar. O sea, pisar porque pensé que estaba, no era tan alto. Cuando tropiezo, ya que me había caído, entonces es cuando vi y veo que es el tamaño de grande que era.*

*R    Sí. Sí, lo sé.*

*P    Okey. Ese día, el día del accidente usted no vio que esa salida estuviese cerrada, simplemente no la vio, ¿verdad?*

*R    No, porque hay una puerta...*

*P    Unjú.*

*R    ...ahí para que uno, uno abre para ir a los elevadores, pero eso yo lo vi después cuando volví a Inmigración.*

*P    Okey.*

*R    Pero no había, no sabía ni cómo se entraba, cómo se llegaba a los ascensores del "parking" donde estábamos ni como de adentro se llegaba a los "parkings" tampoco.*

*P    Okey. ¿Quién fue que le dijo a usted entonces: "Mira, ahí está la puerta"? ¿Eso fue después...? Después que usted va, después del accidente usted vuelve al edificio, ¿verdad?*

*R    Sí, yo vuelvo al edificio a tomar, a tomar fotos.*

*P    Ajá. ¿Usted tiene las fotos?*

*R    Sí, aquí están.*

P    Okey.

R    Yo fui a tomar las fotos.

P    Okey.

P    Okey. Mire, mi pregunta es si la, la puerta de salida hacia el estacionamiento está pegada a Inmigración.

R    Sí, en la, aquí, Inmigración está aquí, aquí en esta de esto y aquí está la puerta, hay una puerta aquí.

P    Okey. No son ni, no hay ni digamos qué se yo, cincuenta pasos de Inmigración a....

R    No le podría decir, no le podría decir cuánto más o menos.

P    Pero está cerca.

R    Sí está cerca, sabiendo que está ahí está cerca.

P    Okey.

R    Pero para mí yo no sabía que eso se pasaba por ahí, había elevadores porque no había ningún...". (Ap. pág. 17-18).

Así las cosas ante el TPI, en o para el 23 de mayo de 2002, la co-demandada San Patricio Office Center presentó *"Moción Solicitando Sentencia Sumaria"*, a la que el 2 de junio de 2002 se unió la co-demandada Estacionamiento Natal Hermanos, exponiendo que el accidente se debió única y exclusivamente a la falta de circunspección y asunción de riesgo de la propia demandante, al hacer mal uso de una rampa de acceso y egreso vehicular, no diseñada para transeúntes, para tratar de entrar al estacionamiento vehicular del edificio de que momentos antes había salido, sin que mediara grado alguno de negligencia de la parte demandada. En su análisis concluyó que:

*"[...]*

*El propio testimonio de la demandante en su deposición es mas que suficiente para establecer que no existe controversia sustancial en cuanto a ningún hecho material del presente caso por lo que procede se dicte sentencia sumariamente a favor de la demandada compareciente. En primer lugar, se puede apreciar de las fotografías que el riel de metal objeto de este caso mide sólo una pulgada y media. Dicho riel de metal, que es una estructura de metal usual y típica en este tipo de estacionamiento, estaba instalado conforme a las leyes y reglamentos de ingeniería pertinentes. La parte demandante no ha producido evidencia pericial para acreditar que el riel de metal no estaba instalado o colocado en una manera inadecuada. Según la propia demandante reconoció en su deposición, ésta estaba caminando por la calle y tuvo la oportunidad plena de observar y darse cuenta de que tenía ese riel de pulgada y media de frente. Aún así optó por cruzarle por encima al riel, de hecho, trató de levantar la pierna lo suficiente como para pasarle por encima, pero aún así, por su propia negligencia, se tropezó y cayó.*

*En el caso de Torres v. Municipio de Mayagüez, 81 JTS 53, el Honorable Tribunal Supremo de Puerto Rico tuvo ante sí una situación casi idéntica a la de este caso. En dicho caso, la demandante instó reclamación contra el Municipio de Mayagüez a consecuencia de uno daños físicos que sufrió por caer en una rampa para impedidos que estaba bajo construcción. Dicha rampa o depresión no estaba pintada ni tampoco había allí aviso, señal o indicación alguna que advirtiera a los transeúntes de la condición existente.*

*El Tribunal Supremo revocó la sentencia de Instancia y desestimó la demanda, aduciendo que la demandante simplemente no estaba mirando por donde caminaba, ya que si hubiera visto la rampa hubiera tenido mas cuidado.*

*"En el caso de autos, los hechos considerados por el tribunal de origen tienden a indicar que la rampa en cuestión estaba terminada. Sólo faltaba el pintarse de amarillo. Por las características físicas descritas previamente era o debió ser visible a la demandante Sra. Torres. Debido a la hora en que ella se cayó - -plena luz del día- -, podemos inferir dos posibles razones para que no se percatara de la misma; que no advirtió porque venía totalmente ajena y despreocupada o que el automóvil temporalmente estacionado frente a la rampa se lo impidió. Bajo cualesquiera de esas alternativas, opinamos que el Municipio recurrente no es responsable.*

*Recuérdese que si bien un peatón no está obligado a constantemente ir mirando hacia la superficie, ciertamente debe evitar el caminar ajeno a aquellas situaciones visibles a su perspectiva visual. La situación es análoga al cuidado normal que se requiere para evitar chocar con un rótulo de tránsito instalado dentro de una acera en forma vertical o el sufrir una caída al pasar de la superficie del pavimento de la carretera hacia el nivel más alto de la acera sin tropezar con su borde." Torres, supra, pág. 2038.*

*En nuestro caso, siquiera tenemos que hacer tal análisis. La demandante vio el riel de metal, pero aún así opto deliberadamente por caminar por encima de el. Ella estaba totalmente conciente [sic] de la existencia del riel, e incluso, trato de evitar tropezar con el, más aún así no lo pudo hacer. Por tal razón, es inescapable que los alegados daños de la demandante fueron causados por ella misma al no levantar bien el pie antes de caminar por encima del riel, por lo que no le es imputable al compareciente negligencia alguna. No procede responsabilizar a la parte demandada, que no ha incurrido en ningún tipo de negligencia, cuando la negligencia total la ha tenido la parte demandante, quien vio un obstáculo en su camino, decidió continuar y traó de sobrepasarlo, pero no pudo con ello, tropezándose sobre sus propios pies. Sin lugar a duda, hay que concluir que los daños sufridos por la demandante fueron causados por sus propios actos y falta de circunspección al caminar por una entrada de automóviles que no tenía paso de peatones.*

*En segundo lugar, la entrada del estacionamiento donde la demandante alegadamente se tropezó no es una entrada peatonal. Dicha entrada en una exclusiva para vehículos de motor. Los peatones deben entrar al estacionamiento por el acceso del interior del edificio. Para ese momento, existía una puerta altamente visible y reconocible que comunicaba el interior del San Patricio Office Center con su estacionamiento, haciendo innecesario que los visitantes de dicho edificio tuvieran que salir fuera del edificio para accesar el estacionamiento por la entrada de vehículos. La demandante en su deposición admitió en más de una ocasión que el día de los hechos del accidente, ella no preguntó a las personas que estaban allí si había alguna salida hacia el estacionamiento a pesar de que las puertas hacia el estacionamiento quedaban muy cerca del Departamento de Inmigración, al que ella había acudido en dicho edificio, que no fue hasta el día que fue a tomar las fotos en preparación de esta demanda pregón a las personas que se encontraban en el edificio y le indicaron que esa era la puerta que llevaba hacia el estacionamiento. A pesar de que el San Patricio Office Center proveyó una salida apropiada de su edificio al estacionamiento bajo techo, la demandante ni siquiera preguntó a los empleados del edificio por tal acceso optando por salir del edificio. [...]".* (Ap. págs. 8-10)

El 23 de agosto de 2004, la Sra. Aguasvivas presentó *"Réplica a Solicitud de Sentencia Sumaria"*, en la que se circunscribió a señalar tres aspectos, a saber:

*"[...]*

*1. **Que como muy bien señalan los demandados, la demandante conocía la condición peligrosa antes de la caída.** (Énfasis suplido)*

*2. Sin embargo, lo que mencionan dichas partes es que ellas obligaban a los usuarios del estacionamiento a pasar por dicha condición peligrosa, ya que, en su afán de lucro, operaban el estacionamiento sin tener abierta una entrada y salida de peatones.*

*3. Esto de por sí no sólo constituye una crasa negligencia, sino un menosprecio total por la seguridad de sus clientes.*

*[...]"*. (Ap. pág. 25)

Mediante Resolución del 20 de diciembre de 2005, el TPI denegó la moción de sentencia sumaria, al estimar que existía una controversia real sustancial en cuanto a si los usuarios del estacionamiento estaban obligados a entrar y salir de él por las rampas para los vehículos, como aduce la parte demandante, o si existía un acceso peatonal del edificio de oficina al edificio del estacionamiento vehicular, como señala parte demandada. (Ap. págs. 26-27).

De tal dictamen recurre la parte demandada y señala que el TPI erró de la siguiente manera:

*"Erró el Tribunal de Primera Instancia de Bayamón al determinar que existe en este caso una controversia de hechos que impide la concesión de una sentencia sumaria."*

Mediante Resolución del 1 de marzo de 2006, concedimos término a la parte recurrida para mostrar causa por la cual no debamos expedir para revocar y dictar sentencia sumaria desestimatoria en cuanto a la causa DDP2000-0938 (406). El término ha transcurrido sin comparecencia alguna. Debemos resolver conforme a lo intimado.

## Exposición y Análisis

### I

Como se sabe, la **sentencia sumaria** gobernada por la Regla 36 de Procedimiento Civil, 32 LPRA Ap. III, R. 36, constituye un mecanismo procesal discrecional y extraordinario cuyo propósito es facilitar la solución justa, rápida y económica de aquellos litigios civiles que no presenten controversias genuinas de hechos importantes y pertinentes que la regla llama *"materiales"*; razón por la cual no ameritan la celebración de un juicio en su fondo y pueden adjudicarse implementando la norma de ley referente a hechos no disputados. *Pilot Life Ins. Co. v. Crespo Martínez,* 136 DPR 624, 632 (1994). Únicamente se concederá el dictamen sumario cuando la evidencia que se presente junto a la moción, establezca con claridad la existencia de un derecho a favor de parte en el litigio.

Es reiterada la doctrina al efecto de que mediante dicho mecanismo se busca obtener un remedio rápido y eficaz en casos en que queda demostrado que sólo es menester adjudicar el derecho sobre hechos importantes y pertinentes (*"materiales"*) que no están en litigio en la causa. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 911-912 (1994); *Revlon v. Las Américas Trust Co.,* 135 DPR 363, 376 (1994). De tal modo y en cumplimiento con el primer postulado del ordenamiento procesal civil, ▮ la disposición por la vía sumaria persigue aligerar la tramitación de toda causa civil, bien mediante sentencia parcial o total, sin celebrar una vista en los méritos, para adjudicar credibilidad, precisamente cuando de los documentos no refutados conste que realmente no existen controversias de hechos sobre aspectos medulares y que sólo resta aplicar el derecho. *PFZ Props., Inc. v. Gen. Acc. Ins. Co., supra; Caquías v. Asoc. Res. Mansiones de Río Piedras,* 134 DPR 181, 216 (1993); *Consejo Tit. Cond. Parkside v. MGIC Fin. Corp.,* 128 DPR 538, 548 (1991); *Cuadrado Lugo v. Santiago Rodríguez,* 126 DPR 272, 279 (1990).

En tal exégesis, se tomarán en consideración las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, y luego de quedar claro que del

conjunto consta que no hay controversia real sustancial en cuanto a ningún hecho importante y pertinente ("*material*") como queda dicho, y que también surja que como cuestión de derecho conste que también debe dictarse sentencia a favor de alguna parte en el litigio aunque no sea ésta la que haya solicitado el remedio sumario. *Neca Mortgage Corp. v. A & W Developers S.E.,* 137 DPR 860 (1995); *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 DPR 714, 720 (1986).

Ante la presencia de conflictos reales y sustanciales respecto a hechos importantes y pertinentes, **aun en caso de razonable duda al respecto**, el foro debe siempre resolver en contra de quien presentó la sentencia sumaria, pues el trámite de la sentencia sumaria no permite que el tribunal en tal caso dirima cuestiones de credibilidad sin la celebración de una vista evidenciaria plenaria. *Rivera v. Depto. de Hacienda,* 149 DPR 141 (1999); *Col Ing. Agrim. P.R. v. A.A.A.,* 131 DPR 735, 781-782 (1992). Tal norma busca minimizar el peligro de que un trámite sumario pueda prestarse para despojar a un litigante de su "*día en corte*", principio elemental del debido procedimiento de ley. *Roig Comercial Bank v. Rosario Cirino,* 126 DPR 613, 617-618 (1990). Tampoco es aconsejable que los tribunales utilicen el mecanismo procesal de sentencia sumaria para resolver casos en que deban sopesarse elementos subjetivos sobre intención, propósitos mentales o factores de credibilidad. *Elías y otros v. Chenet y otros,* 147 DPR 507 (1999); *Rivera v. Depto. de Hacienda, supra.*

Es norma reiterada que meras alegaciones y teorías, así como argumentos forenses, no constituyen prueba. *Pressure Vessels of P.R. v. Empire Gas of P.R.,* 137 DPR 497 (1994), *Reece Corp. v. Arilla Inc.,* 122 DPR 270, 286 (1988).

*Sólo procede dictar sentencia sumaria cuando surge claramente que el promovido por la moción no puede prevalecer bajo ningún supuesto de hechos y que el tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia. Corp. Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714 (1986). Cuando no existe una clara certeza sobre todos los hechos de la controversia, no procede una sentencia sumaria. Metrop. de Préstamos v. López de Victoria, 141 D.P.R. 844 (1996). La sentencia sumaria sólo debe concederse cuando no hay una genuina controversia sobre los hechos materiales y el tribunal se convence de que tiene ante sí la verdad de todos los hechos pertinentes. Cualquier duda sobre la existencia de una controversia sobre los hechos materiales, debe resolverse contra la parte promovente. Audiovisual Lang v. Sist. Est. Natal Hnos., 144 D.P.R. 563 (1997). La sentencia sumaria sólo debe dictarse en casos claros y cualquier duda en cuanto a si hay hechos pertinentes en controversia debe resolverse contra la parte que solicita la sentencia sumaria. Toda inferencia que se haga a base de los hechos y documentos que obren en los autos, debe tomarse desde el punto de vista más favorable al que se opone a la solicitud de sentencia sumaria. Véanse: Piñero v. A.A.A., 146 D.P.R. 890 (1998); Audiovisual Lang v. Sist. Est. Natal Hnos, ante; Medina v. M. S. & D. Química P.R., Inc., 135 D.P.R. 716 (1994); Rivera et al. v. Superior Pkg. Inc., et al, 132 D.P.R. 115 (1992). García v. DAREX P.R., Inc., 148 D.P.R. 364 (1999). Así pues, tomando en consideración que la sentencia sumaria es un remedio de carácter discrecional, "[e]l sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de 'su día en corte', principio elemental del debido proceso de ley". (Énfasis suprimido) Roig Com. Bank v. Rosario Cirino, 126 D.P.R. 613, 617 (1990); Córdova v. Larín, 151 D.P.R. 192 (2000).*

■ *Al dictar sentencia sumaria el tribunal: (1) analizará los documentos que acompañan la moción solicitando la sentencia sumaria y los documentos incluidos con la moción en oposición y aquellos que obren en el expediente del tribunal; (2) determinará si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. PFZ Props., Inc. v. Gen. Acc. Ins. Co., 136 D.P.R. 881 (1994). Mgmt. Adm. Servs. Corp. v. E.L.A., 152 D.P.R. 599, 610-611 (2000).*

De los hechos que informan esta causa, mediante la declaración jurada de la propia parte demandante que consta en la deposición unida en autos, surge claramente que no existe en autos la "*controversia real*

*sustancial"* que el hermano foro de instancia encontró para denegar el dictamen sumario.

## II

La Sra. Aguasvivas expone en su declaración jurada que luego de salir del mencionado edificio de oficinas, intentó entrar al estacionamiento vehicular (parking) por la rampa vehicular debido a que en ese momento no conocía que desde el interior del edificio de oficinas, donde estaba momentos antes, existe una puerta que da directo acceso peatonal al estacionamiento. Por lo tanto, no es posible sostener en autos que exista controversia de hechos real y sustancial en cuanto al acceso peatonal entre el edificio de oficinas y el edificio de estacionamiento vehicular.

Por motivo de que la señora demandante no advirtiera de la existencia de tal intercomunicación peatonal, entre ambas edificaciones, edificio de oficinas y edificio de estacionamiento, no puede colegirse que la parte demandada obliga a los usuarios a entrar al edificio de estacionamiento por las rampas diseñadas sólo para los vehículos, máxime cuando la señora pudo fácilmente advertir y de hecho reconoció que por el lugar en que intentó accesar al estacionamiento no existía acceso alguno peatonal, por lo que para entrar optó por aprovechar la momentánea apertura del portón metálico que controla el acceso y egresos de vehículos, reconociendo la *"... condición peligrosa antes de [ocurrir] la caída"*.

La inobservancia original de la Sra. Aguasvivas en cuanto a la intercomunicación interna entre edificio de oficinas y edificio de estacionamiento vehicular, por medio de puerta y acera, que luego descubrió en la visita para tomar fotos, no es sinónimo de negligencia por parte del dueño del edificio y operador del estacionamiento. Tampoco se alega defecto en diseño o clausura del acceso peatonal de acceso y egreso al edificio de estacionamiento vehicular.

Otra cosa muy distinta y no presente ni alegada en esta causa, sería que la Sra. Aguasvivas se hubiere visto forzada a utilizar la rampa para vehículos, por razón de que entre ambas estructuras no exista acceso para peatones o que de existir, estuviere clausurado.

Más aún, en la breve oposición a la solicitud de sentencia sumaria del 23 de agosto de 2004, la parte demandante se limitó a señalar que aunque *"...conocía la condición peligrosa antes de la caída..."*, la negligencia de la parte demandada radica en el *"...afán de lucro [de los que] operaban el estacionamiento sin tener abierta una entrada y salida de peatones"*. El señalamiento de *"lucro"* es realmente conclusorio, puesto que no se sustenta en un dato de hecho constatado o constatable. El segundo, referente a la entrada y salida peatonal, resulta equivocado, puesto que del propio testimonio bajo juramento de la parte apelante consta que la intercomunicación entre el edificio de oficina y el edificio de estacionamiento vehicular existe y ella no lo advirtió, aunque estaba cerca de la oficina de inmigración a la que ella acudió.

Obviamente, no puede la parte demandante trasladar la responsabilidad de su inobservancia y consciente asunción de riesgo a la parte demandada, basado en una premisa que indubitadamente le consta equivocada, puesto que del propio testimonio de la demandante se deduce que no es cierto que la parte demandada **obligaba** a los usuarios a *"...pasar por dicha condición peligrosa, ya que, en su afán de lucro, operaban el estacionamiento sin tener abierta una entrada y salida de peatones"*. (Ap. pág. 25) Como queda dicho, muy cerca de la oficina de inmigración se encuentra la puerta que conecta al estacionamiento vehicular, que el día del accidente no vio, pero que a su siguiente visita (para tomar fotos) sí descubrió.

## III

En esta jurisdicción, la responsabilidad civil derivada de actos u omisiones culposas o negligentes se rige por lo dispuesto en el Artículo 1802 del Código Civil y su jurisprudencia interpretativa. 31 LPRA 5141; *Montalvo v. Cruz,* 144 DPR 748 (1998); *Toro Aponte v. ELA,* 142 DPR 464 (1997); *Elba ABM v. UPR,* 125 DPR 294 (1990). Tal precepto de ley establece que *"el que por acción u omisión causa daño a otro,*

*interviniendo culpa o negligencia, está obligado a reparar el daño causado".*

Para que surja una causa de acción bajo este artículo será necesario que concurran los siguientes tres requisitos: que ocurra un daño real; un acto u omisión culposa o negligente; y que exista una relación o nexo causal entre el daño y la conducta culposa o negligente. *Montalvo v. Cruz, supra; Toro Aponte v. ELA, supra; Ramírez v. ELA,* 140 DPR 385 (1996); *Tormos Arroyo v. DIP,* 140 DPR 265 (1996); *Monllor v. Soc. Gananciales,* 138 DPR 600 (1995).

Dentro del marco del Artículo 1802, *supra,* la omisión genera responsabilidad civil por negligencia cuando la conducta quebranta un deber de cuidado impuesto o reconocido por ley y que de haberse observado se hubiera evitado el daño. *Tormos Arroyo v. DIP, supra; Arroyo López v. ELA,* 126 DPR 682 (1990); *Soc. Gananciales v. González Padín Co., Inc.,* 117 DPR 94 (1986). Ante una reclamación fundada en responsabilidad por omisión, la pregunta obligada implica saber si existía un deber jurídico de actuar de parte del alegado causante del daño. *Arroyo López v. ELA, supra.*

En el caso de las personas o empresas que operan establecimientos abiertos al público con fines comerciales, se ha resuelto que éstos tienen el deber de mantener sus respectivos establecimientos en condiciones óptimas de seguridad, por lo que deben tomar todas las medidas que sean razonablemente necesarias de manera que los clientes que les patrocinan no estén en riesgo de sufrir daño. *Colón y otros v. Kmart y otros,* 154 DPR ___, **2001 JTS 98**; *JADM v. Centro Com. Plaza Carolina,* 132 DPR 785, 801 (1993); *Cotto v. CM Ins. Co.,* 116 DPR 644, 650 (1985); *Aponte Betancourt v. Meléndez,* 87 DPR 652, 653 (1963). Véanse, además, *Maldonado v. Interamerican University,* 104 DPR 420 (1975); *González Ivankovitch v. Las Amer. Prof. Ctr.,* 103 DPR 89 (1974); *Malavé v. Hosp. de la Concepción,* 100 DPR 55 (1971).

De ningún modo significa ello que el dueño de un establecimiento comercial asume una responsabilidad, absoluta frente a cualquier daño sufrido por los clientes que le visitan. Para que se incurra en responsabilidad el demandante tiene que probar que el accidente ocurrió en un área bajo el control del establecimiento y que el dueño del establecimiento no ejerció el debido cuidado para que el local fuera seguro y libre de riesgos previsibles para sus clientes. *Colón y otros v. Kmart y otros, supra; Cotto v. CM Ins. Co., supra; Goose v. Hilton,* 79 DPR 523 (1956).

En los casos de daños y perjuicios, específicamente a consecuencia de caídas, la parte demandante debe probar como parte esencial de su causa de acción, la existencia de una condición de peligrosidad dentro del establecimiento que a su vez sea la causa eficiente de la caída, y que tal condición peligrosa era de conocimiento de la parte demandada, o que su existencia era razonablemente anticipable como para imputarle conocimiento. *Colón y otros v. Kmart y otros, supra; Cotto v. CM Ins. Co., supra.* En otras palabras, la parte demandante tiene la obligación de poner al tribunal en condiciones de poder hacer una determinación clara y específica sobre negligencia, mediante la presentación de prueba admisible a esos efectos.

Conforme a lo expuesto, es de rigor concluir que no existe en autos controversia real sustancial de que la edificación de referencia que opera y administra la parte demandada cuenta con acceso exclusivo peatonal, interconector entre edificio de oficina y edificio de estacionamiento y por separado mantiene un acceso vehicular en el edificio de estacionamiento, vía rampas y portones mecánicos, sin aceras peatonales.

El hecho de que la parte demandante no descubriera y no utilizara los accesos peatonales infraestructura existentes y por otro lado asumiese el riesgo obvio de accesar al estacionamiento por la rampa vehicular y como lo admitió en su deposición, advirtiendo el riesgo sin tan siquiera preguntar, no cambia la ecuación jurídica de hechos y derecho que tenemos aquí que acatar. Realidad que a su vez no es capaz de demostrar factor alguno de negligencia imputable a la parte demandada.

Es forzoso concluir que estamos ante unos hechos que sólo implican asunción de riesgo de la parte demandante y la ocurrencia de un accidente desgraciado, sin conexión de alguna causa que implique negligencia de la parte demandada. Ello obliga a la desestimación de la causa por la vía sumaria.

## Dictamen

Conforme a todo lo que antecede, expedimos el auto de *Certiorari* solicitado, para revocar la Resolución recurrida y en su lugar dictar SENTENCIA SUMARIA ordenando la desestimación y archivo de la causa DDP2000-0938 (406) por no existir nexo causal alguno de negligencia entre lo ocurrido y la parte demandada. Se imponen las costas a la parte demandante sin especial imposición de honorarios de abogados.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones