ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| LESLIE FLORES RODRÍGUEZ<br><br>Apelante<br><br>V.<br><br>REGENA ROBINSON<br><br>Apelada | TA2025AP00309 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2025CV03404<br><br>Sobre: Cobro de dinero y Desahucio Sumario |
|---|---|---|

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

Marrero Guerrero, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 14 de noviembre de 2025.

Comparece la señora Leslie Flores Rodríguez (señora Flores Rodríguez o apelante), propietaria de un apartamento que rentó a la señora Regena Robinson (señora Robinson o apelada), y solicita la revisión de una *Sentencia* emitida el 21 de julio de 2025 por el Tribunal de Primera Instancia, Sala Superior de San Juan.[1] En dicho dictamen, el foro primario determinó que la causa de desahucio que la apelante promovió contra la señora Robinson se tornó académica. Además, resolvió que la señora Flores Rodríguez retendría $13,629.88, por el pago del servicio de agua y cinco (5) meses de ocupación (*five month occupancy*). También, ordenó que la apelante devolviera $14,870.12 a la apelada por parte de los cinco (5) meses de ocupación, el depósito de mascota (*pet deposit*) y el depósito de seguridad (*security deposit*).

Con la comparecencia de las partes y la presentación de la transcripción de la prueba oral (TPO), nos encontramos en posición de resolver. Se adelanta la revocación parcial de la *Sentencia* apelada,

---

[1] Entrada Núm. 33 del expediente del caso SJ2025CV03404 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC). Notificada el 21 de julio de 2025.

únicamente en lo relativo a la devolución de los depósitos de seguridad y mascota a favor de la señora Robinson. Se ordena al TPI celebrar una vista para determinar si la apelante tenía derecho a retener alguna cantidad de dichos depósitos, de acuerdo con la prueba que se desfile sobre la condición del inmueble y su mobiliario antes y después del alquiler.

**I.**

Este caso se originó el 22 de abril de 2025, cuando la señora Flores Rodríguez presentó una *Demanda* por cobro de dinero y desahucio sumario contra la señora Robinson.[2] En esta, alegó que suscribió un contrato de arrendamiento de su inmueble con la apelada por doce (12) meses, del 1 de julio de 2024 al 30 de junio de 2025, por un canon mensual de $4,500.00, pagadero por adelantado en o antes del día cinco (5) de cada mes. Adujo que ello estaba sujeto a una penalidad del cinco por ciento (5%) por pago tardío. A su vez, arguyó que la apelada debía cubrir el consumo de agua. Sin embargo, señaló que esta no pagó la renta de marzo y abril de 2025, así como el servicio de agua de julio a septiembre de 2024 y de enero a abril de 2025. Estimó la deuda en $9,450.00 por la renta y las penalidades — que incrementaba mensualmente a razón de $4,500.00 por la renta y $225.00 por la penalidad— y $236.54 por el consumo de agua.

El 10 de junio de 2025, la señora Robinson presentó una *Contestación a la Demanda* y argumentó que, aunque el contrato de arrendamiento disponía que debía pagar el servicio de agua dentro de tres (3) días de recibir las facturas, la apelante no se las enviaba con regularidad, por lo que solo pagó las recibidas.[3] Además, sostuvo que pagó seis (6) meses de renta por adelantado al firmar el contrato y los seis (6) restantes en los meses de agosto a diciembre de 2024, de manera que cumplió con el pago total del arrendamiento.

---

[2] *Íd.*, Entrada Núm. 1 en SUMAC.
[3] *Íd.*, Entrada Núm. 19 en SUMAC.

Subsiguientemente, el 20 de junio de 2025, el TPI celebró una vista de desahucio en la que ambas partes declararon. A continuación, se sintetizan sus testimonios:

**Señora Flores Rodríguez**

La testigo declaró que era la propietaria de un apartamento en el Condominio Prila.[4] Indicó que, por medio de una corredora de bienes raíces, alquiló el inmueble amueblado a la señora Robinson mediante un contrato de arrendamiento vigente del 1 de julio de 2024 al 30 de junio de 2025, por un canon mensual de $4,500.00.[5] Explicó que el servicio de agua permanecía a su nombre porque el Condominio no tenía cuentas individuales, y que la señora Robinson debía reembolsar el consumo de dicha utilidad.[6] Testificó que las facturas de agua se emitían de forma irregular por los retrasos de la administración, pero que las remitía a la señora Robinson tan pronto las recibía.[7] Empero, atestó que la apelada pagó el servicio de agua de forma inconsistente entre junio y agosto de 2024 y desde diciembre de 2024 hasta la presentación de la *Demanda*.[8] A saber, adujo que la administración del Condominio facturó $365.71 y la apelada pagó $235.83, por lo que adeudaba $129.88.[9]

Manifestó que la señora Robinson pagó la renta durante ocho (8) meses, de julio de 2024 a febrero de 2025, pero que adeudó $18,000.00 por los meses de marzo a junio de 2025, por un total de $19,029.88 que incluía los $129.88 por el consumo de agua y los $900.00 por la penalidad.[10] Expresó que, en la tabla de reconciliación que preparó, anotó un crédito de $15.00 correspondiente a un pago en exceso de febrero de 2025 que se acreditó a la renta de agosto de

---

[4] TPO del 20 de junio de 2025, pág. 13, líneas 20-25, pág. 14, línea 1.
[5] *Íd.*, pág. 14, líneas 2-16; pág. 18, líneas 2-11; pág. 42, líneas 13-21.
[6] *Íd.*, líneas, 12-25; pág. 19, línea 1.
[7] *Íd.*, pág. 19, líneas 2-25; pág. 20, línea 1.
[8] *Íd.*, líneas 18-25; pág. 21, líneas 1-5; pág. 29, líneas 8-10.
[9] *Íd.*, pág. 28, línea 25; pág. 29, líneas 1-14.
[10] *Íd.*, líneas 2-17; pág. 26, líneas 12-22; pág. 27, líneas 7-9; pág. 29, líneas 20-25; pág. 30, líneas 1-9; pág. 34, líneas 2-15.

2024. Asimismo, expuso que el 19 de mayo de 2025, la apelada abonó $135.00 por el consumo de agua de diciembre a marzo y que el 9 de junio de 2025, pagó $29.00 aplicados a dicho mes.[11]

La testigo señaló que la señora Robinson entregó un depósito inicial y otro adicional, ya que tenía un gato en el apartamento amueblado.[12] Explicó que, aunque usualmente su corredora de bienes raíces exigía una fianza con una compañía privada para garantizar los pagos durante la pendencia de un pleito de desahucio, la apelada ofreció un depósito equivalente a cinco (5) meses de renta para asegurar el pago.[13] Detalló que el pago de $33,000.00 incluía el primer mes por adelantado, los cinco (5) meses de depósito, el depósito de seguridad y el de mascota.[14] Declaró que la partida cinco (5) meses de ocupación se refería a una fianza de garantía que:

> Al término del arriendo, luego que entregara el apartamento, que se supone que lo fuéramos a inspeccionar la *realtor* de [la señora Robinson] y mi *realtor* y yo, para ver que todo estuviera en buenas condiciones, ver qué le tenía que yo descontar o no descontar, si algo, de algún mueble o cosa que se hubiese dañado, que no fuera por lo que llaman en inglés *normal wear and tear*.[15]

Aclaró que la cláusula terminación anticipada del arrendamiento imponía una penalidad y una compensación de un mes de renta y la pérdida de los depósitos de seguridad, los cuales comprendían los depósitos de mascota, de seguridad y el primer mes, pero no los cinco (5) meses de ocupación.[16] Además, testificó que el 19 de junio de 2025, un día previo a la vista, la apelada le envió unos correos electrónicos en los que informó que oficialmente entregó la propiedad y dejó las llaves en una gaveta.[17]

**Señora Robinson**

---

[11] *Íd.*, pág. 30, líneas 14-23.
[12] *Íd.*, pág. 42, líneas 10-16.
[13] *Íd.*, líneas 16-25; pág. 43, líneas 1-2.
[14] *Íd.*, pág. 43, líneas 3-25.
[15] *Íd.*, pág. 44, líneas 3-18.
[16] *Íd.*, líneas 21-25; pág. 48, líneas 1-25; pág. 49, líneas 1-11.
[17] *Íd.*, pág. 50, líneas 17-25; págs. 51-53, líneas 1-25.

Mediante el uso de un intérprete, la testigo expresó que su esposo acordó con la corredora de bienes raíces pagar seis (6) meses por adelantado y seis (6) meses posteriormente. Por ello, atestó que al adelantar una suma bastante alta, la corredora no vio la necesidad de exigir una fianza.[18] Señaló que efectuó un pago inicial de $33,000.00 a través de Bank of America, que cubría el primer mes, los cinco (5) meses de ocupación, el depósito de mascota por su gato y el depósito de seguridad.[19] Añadió que la señora Flores Rodríguez le solicitó el pago por Venmo, pero la aplicación lo rechazó, por lo que acordaron un cargo adicional de $15.00 por transferencia de cable.[20]

Afirmó que entendió claramente que pactó pagar seis (6) meses por adelantado y seis (6) meses después, y que, de no ser así, habría buscado otra propiedad.[21] Sostuvo que el contrato disponía que debía pagar el servicio de agua dentro de tres (3) días de recibir la factura por correo electrónico.[22] Explicó que esperaba recibir las facturas de agua para pagarlas por separado, pero la apelante las acumuló con la renta.[23] Indicó que la señora Flores Rodríguez dejó de enviar las facturas en febrero y no remitió la de mayo, la cual pagó en junio.[24]

A preguntas del tribunal, manifestó que ya se había mudado y no tenía pertenencias en el apartamento, por lo que la apelante podía hacer uso de su propiedad.[25] Por ello, el TPI hizo constar que la causa de acción sobre desahucio se tornó académica, debido a que la apelada desalojó voluntariamente la propiedad.[26]

La testigo negó la deuda reclamada y afirmó que pagó en exceso, ya que el contrato era por doce (12) meses. Atestiguó que nunca recibió comunicación por falta de pago tanto de arrendamiento

---

[18] *Íd.*, pág. 56, líneas 16-25; pág. 57, líneas 1-4.
[19] *Íd.*, pág. 57, líneas 4-7.
[20] *Íd.*, pág. 57, líneas 12-17; pág. 58, líneas 13-19; pág. 59, líneas 1-7.
[21] *Íd.*, pág. 72, líneas 3-21.
[22] *Íd.*, líneas 7-8; pág. 75, líneas 4-5; pág. 57, líneas 7-11.
[23] *Íd.*, pág. 60, líneas 2-11.
[24] *Íd.*, pág. 62, líneas 3-6; pág. 63, líneas 4-13.
[25] *Íd.*, pág. 63, líneas 14-25; pág. 64, línea 1.
[26] *Íd.*, pág. 64, líneas 2-21.

como de agua.[27] Empero, reconoció que el 24 de marzo de 2025, recibió una carta en la que se le notificó una deficiencia de $4,725.00 en renta y $135.95 por agua, con un término de quince (15) días para subsanar el incumplimiento.[28] Finalmente, aclaró que instaló una alarma portátil y se la llevó al desocupar el apartamento.[29]

Así las cosas, el 21 de julio de 2025, el TPI emitió la *Sentencia apelada*.[30] En la misma, formuló las siguientes determinaciones de hechos, luego de evaluar la prueba oral, la conducta de las testigos, la evidencia documental y el derecho aplicable:

1. Las partes otorgaron un contrato de arrendamiento el 11 de junio de 2024. Este fue firmado por la Sra. Flores Rodríguez y la Sra. Robinson.
2. La Sra. Flores Rodríguez es abogada de profesión, arrendadora y propietaria [de un apartamento en el Condominio Prila] […] desde el 30 de abril de 2012.
3. La Sra. Robinson es la arrendataria del apartamento […]
4. El término del contrato de arrendamiento era desde el 1 de julio de 2024 hasta el 30 de junio de 2025. Este contrato de arrendamiento se podía renovar por un año adicional.
5. El servicio de agua era notificado por la administración del condominio a la Sra. Flores Rodríguez por correo electrónico[,] quien a su vez le comunicaba a la Sra. Robinson por correo electrónico la comunicación que ésta había recibido de la administración del condominio. Esto es así, ya que el agua no se facturaba por la AAA directamente al titular del apartamento en el Cond. Prila. Todo esto tenía la consecuencia de que la Sra. Robinson le reembolsara a la Sra. Flores Rodríguez la cantidad pagada por servicios de agua.
6. No hay controversia de que la Sra. Robinson pagó los cánones de arrendamiento desde el mes de julio de 2024 hasta el mes de febrero de 2025. Es decir, los primeros 8 meses del contrato.
7. La Sra. Flores Rodríguez le reclama a la Sra. Robinson el pago de una deuda por la cantidad de $19,029.88 (se compone de: $18,000 – deuda de canon de arrendamiento; $900 – penalidad; $129.88 – servicio de agua adeudada).
8. El 24 de marzo de 2025 se envió carta por correo certificado con acuse de recibo a la Sra. Robinson para que curara en 15 días el incumplimiento de contrato con relación al pago tardío del canon de arrendamiento del mes de marzo [de] 2025 ($4,725, incluyendo el cargo por demora) y del servicio de agua para el mes de diciembre de 2024 y los meses de enero a marzo de 2025 ($135.95). El periodo de tiempo transcurrió y no se curó el

---

[27] *Íd.*, pág. 67, líneas 4-25; pág. 68, líneas 1-8; pág. 77, líneas 13-19.
[28] *Íd.*, pág. 86, líneas 1-25; pág. 87, líneas 1-10.
[29] *Íd.*, pág. 90, líneas 13-25; pág. 91, líneas 1-13.
[30] Ver nota al calce Núm. 1.

incumplimiento. Por tanto, se presentó la acción de desahucio y cobro de dinero el 22 de abril de 2025.

9. El contrato de arrendamiento indica que "Early Termination of Lease: Early termination of this lease by LESSEE, under any circumstances, will carry penalty compensation payable to the LESSOR of one full month's worth of rent, and all security deposits will be forfeited." Sobre esta cláusula[,] la Sra. Flores Rodríguez indicó que esta cláusula significa el pago de un mes de renta y los pagos hechos bajo la categoría de deposit.

10. El pago de la renta mensual por parte de la Sra. Robinson a favor de la Sra. Flores Rodríguez era por la cantidad de $4,500.

11. El contrato contiene una cláusula que indica:

PAYMENTS – The initial payment will consist of a security deposit (equivalent to one month's rent), $1,500 pet deposit, the first month's rent, and five months in advance. Thereafter rent will be paid the First (1st) day of every month for the duration of this lease agreement, and no later than the FIFTH (5th) day of each month (this shall be known as the "grace period"). Any payment received after the grace period shall incur a five percent (5%) late charge of said monthly payment. The Initial Payment Consist of: Total - $33,000; FIRST MONTH OCCUPANCY $4,500; FIVE MONTH OCCUPANCY $22,500; SECURITY DEPOSITS $4,500; PET DEPOSIT $1,500.

12. El contrato, con relación a la cláusula titulada Security Deposit, indica:

SECURITY DEPOSIT – LESSEE will give the LESSOR a security deposit equal to FOUR THOUSAND DOLLARS ($4,500). LESSOR shall hold, in good faith, the Security Deposit as security for the full and faithful performance by LESSEE of each and every term, covenant, and condition of this agreement. LESSEE shall not apply, at any time, the Security Deposit to any month's partial or complete rent. LESSOR will be responsible for returning to LESSEE all or any portion of the Security Deposit within Thirty (30) LABOR days after the expiration of this Agreement upon the surrender of the Property by LESSEE in good condition, normal wear and tear excepted, including the keys delivered to LESSEE on the Effective DATE of this Agreement, and all rent and applicable water bill(s) fully and completely paid. The Security deposit may be used to cover any unpaid water bill. Notwithstanding the LESSEE's payment of the pet deposit, security deposit may be used to cover any damages caused by LESSEE's pet.

13. Sobre la partida FIVE MONTH OCCUPANCY de $22,500[,] la arrendadora indicó que esta partida pretendía ser una fianza exigida por su realtor, la cual normalmente es expedida por una compañía fiadora para poder cobrar los cánones de arrendamiento mientras se resuelve un pleito de desahucio. En este caso[,] no se compró la fianza a una

compañía privada. Así las cosas, la Sra. Flores Rodríguez concluyó expresando que lo que se hizo fue realizar un depósito de cinco meses de renta para asegurar los cánones de arrendamiento. No obstante, la Sra. Flores Rodríguez luego indicó que el pago titulado FIVE MONTH OCCUPANCY de $22,500 era una fianza de garantía que serviría para costear bienes dañados o reparaciones al apartamento que hubieran ocurrido al finalizar el contrato de arrendamiento. Y que de no haber nada dañado, la Sra. Flores Rodríguez devolvería los $22,500.

14. La Sra. Flores Rodrígue[z] indicó que el significado de la oración "[T]hereafter rent will be paid the First (1st) day of every month for the duration of this lease agreement, and no later than the FIFTH (5th) day of each month (this shall be known as the "grace period")." es que el contrato es de un año y que se pagará arrendamiento, después de realizarse su pago inicial, el primer día de cada mes durante el término del contrato.

15. La Sra. Robinson compareció representada por abogado y no surge duda o planteamiento que ponga en duda la corrección del diligenciamiento del emplazamiento, según evidenciado por la parte demandante. También[,] se concluye que al comparecer representada por abogado se sometió a la jurisdicción del tribunal.

16. La Sra. Robinson trabajó como periodista, y en otras posiciones, en distintos medios de comunicación en los Estados Unidos de América.

17. La Sra. Robinson se mudó a Puerto Rico con su hija y cuando se mudó estaba separada de su esposo. Por tanto, como consecuencia de las circunstancias de sus ingresos, se le solicitaron unos requisitos y unas fianzas que pagar.

18. La Sra. Robinson indicó que, ante los requisitos solicitados, accedió y procedió a realizar, en acuerdo con su esposo, un pago de seis meses por adelantado y luego el pago de los otros seis meses. Por tanto, al así actuar, expresó la Sra. Robinson que la realtor le indicó que al pagar una cantidad considerable por adelantado no había necesidad de la fianza.

19. En conclusión, la Sra. Robinson entendió que el primer pago (initial payment) incluía el pago del primer mes, el pago de los primeros 5 meses, el security deposit y el pet deposit por su gato de nombre Prince. Este primer pago se hizo a través de Bank of America.

20. La Sra. Robinson podía pagar a la Sra. Flores Rodríguez a través de la aplicación Venmo. Sin embargo, la aplicación Venmo no le resultaba viable a la Sra. Robinson.

21. La Sra. Robinson nunca tuvo problemas con el uso de las áreas comunes, las cuales no podían ser utilizadas si la cuenta de servicio de agua reflejaba balance adeudado.

22. No se expresó por ninguna de las partes que la Sra. Robinson hubiera participado de la redacción del contrato de arrendamiento. Surge del testimonio de las partes que el contrato es creado y entregado por la Sra. Flores Rodríguez por sí o a través de su representante (realtor).

El TPI reconoció que del testimonio de las partes surgió que la señora Flores Rodríguez redactó el contrato y que la señora Robinson

no tuvo poder de negociación, por lo que las cláusulas se debían interpretar a favor de esta última.

El TPI determinó que la controversia estribó en las cláusulas de terminación anticipada del arrendamiento, pagos y depósito de seguridad. Concluyó que la apelada pagó $63,000.00 por los cánones de arrendamiento —$36,000.00 por ocho (8) meses de arrendamiento desde julio de 2024 a febrero de 2025, $4,500.00 por la renta en adelantado y $22,500.00 por cinco (5) meses por adelantado—, $235.83 por el servicio de agua, y que entregó $69,235.83 entre pagos y depósitos. Asimismo, concretó que el contrato de arrendamiento reflejó que la señora Robinson pagó $33,000.00 por otros conceptos.

Según el foro *a quo*, la señora Robinson manifestó que su entendimiento e intención, de acuerdo con lo expresado directamente por la apelante o a través de terceros, era que debía pagar $22,500.00 por cinco (5) meses de renta por adelantado, el primer mes y luego cubrir los seis (6) meses restantes. Precisó que, por su parte, la señora Flores Rodríguez sostuvo que los $22,500.00 representaban una fianza destinada a garantizar el pago de la renta en caso de incumplimiento pero, también, que servían como depósito para cubrir posibles daños al apartamento o mobiliario. Ante estas versiones contradictorias, el TPI determinó que debía realizar una interpretación de las cláusulas contractuales en controversia.

Asimismo, indicó que el contrato no definía ni regulaba el uso o propósito de los $22,500.00 clasificados como cinco (5) meses de ocupación y que solamente se mencionaba en la cláusula de pagos como parte del pago inicial, junto al depósito de seguridad, el de mascota y el primer mes de renta.

Sobre la cláusula de depósito de seguridad, el tribunal de instancia observó que el contrato establecía que era una garantía al fiel cumplimiento del contrato que se devolvía de no haber daños en el apartamento y que se podía aplicar al pago del servicio de agua,

pero no para cubrir la renta. También, destacó que la cláusula de terminación anticipada del arrendamiento imponía una penalidad de un mes de renta de $4,500.00 y la confiscación de los depósitos de seguridad en plural. Ante ello, interpretó que esta referencia no aludía únicamente al depósito de seguridad, sino que incluía el depósito de mascota. Con base en ello, concluyó que las partidas del primer mes de ocupación y de los cinco (5) meses de ocupación no constituían depósitos de seguridad, sino pagos adelantados de renta.

Por todo lo anterior, el TPI concluyó que la señora Robinson no adeudaba renta, puesto que pagó $63,000.00 por dicho concepto cuando el total contractual era $54,000.00, lo que implicaba un exceso de $9,000.00. Indicó que dicha cantidad iba a ser devuelta de la partida de $22,500.00, conocida como cinco (5) meses de ocupación, de la cual la señora Flores Rodríguez retendría $13,500.

En lo que respecta al depósito de seguridad, el tribunal inferior resolvió que debía devolverse, excepto por el pago del servicio de agua, al no existir incumplimiento contractual ni daños. A saber, estableció que la apelante debía reintegrar $4,370.12 y retener $129.88 por el saldo de agua. Además, dispuso la devolución íntegra del depósito de mascota, ya que no se alegó que la mascota causó daños. Resolvió, además, que la causa de acción de desahucio se tornó académica.

Eventualmente, el 4 de agosto de 2025, la señora Flores Rodríguez solicitó enmendar las determinaciones de hechos y conclusiones de derecho.[31] Sostuvo que no redactó el contrato, sino la corredora de bienes raíces. Arguyó que, al momento del juicio, la señora Robinson aún tenía posesión del apartamento porque no había entregado las llaves, por lo que no pudo inspeccionarlo ni presentar prueba sobre su estado. A su vez, solicitó modificar la concesión de $4,370.12 del depósito de seguridad y $1,500.00 del

---

[31] *Íd.,* Entrada Núm. 38 en SUMAC.

depósito de mascota a la señora Robinson, ya que la entrega de dichas sumas estaba supeditada a que las llaves se entregaran y la propiedad estuviese en buenas condiciones, salvo el desgaste normal por uso. Adujo, también, que la señora Robinson abandonó el inmueble con enseres y muebles dañados, algunos aparentemente por su mascota. Indicó que, aunque no pretendía desfilar prueba adicional tras concluir el juicio, incluiría fotografías para fines ilustrativos. Asimismo, peticionó aclarar que el hecho de que la apelada dejó de residir el apartamento sin devolver las llaves no significó que la causa de acción de desahucio se tornó académica.

En igual fecha, el TPI emitió una *Orden* mediante la cual denegó la solicitud de enmienda a las determinaciones de hechos y conclusiones de derecho.

Inconforme, el 3 de septiembre de 2025, la señora Flores Rodríguez presentó este recurso de apelación, en el que señaló que el tribunal de instancia incurrió en el siguiente error:

> ERRÓ EL TPI AL DICTAR SENTENCIA DISPONIENDO QUE LA ARRENDADORA VENÍA OBLIGADA A DEVOLVER ÍNTEGRAMENTE LOS DEPÓSITOS DE SEGURIDAD Y DE MASCOTA A LA ARRENDATARIA, PESE A QUE EL CONTRATO CLARAMENTE PROVEE QUE LA DEVOLUCIÓN DE TALES DEPÓSITOS ESTÁ SUJETA A DESCUENTOS POR DAÑOS CAUSADOS POR LA ARRENDATARIA Y SU MASCOTA Y PESE A QUE DURANTE LA VISTA NO SE PASÓ PRUEBA SOBRE LA CONDICIÓN DE LA PROPIEDAD ARRENDADA.

En esencia, la apelante adujo que los depósitos de mascota y seguridad tenían el objetivo de garantizar el resarcimiento por los daños que la señora Robinson, su hija o su mascota causaran al apartamento y que solo debían devolverse si la propiedad se entregaba en buen estado, salvo el desgaste natural. Señaló que el tribunal reconoció ese propósito, pero ordenó la devolución del depósito de seguridad al concluir que no hubo incumplimiento en el pago de la renta. Apuntó que la apelada mantenía la posesión del inmueble, se negó a permitir una inspección y no se presentó evidencia sobre la condición del apartamento antes ni después del

arriendo. Ante la falta de prueba sobre los daños, argumentó que el tribunal no podía disponer la devolución de los aludidos depósitos. Manifestó que, al solicitar reconsideración, presentó fotografías que mostraban el estado deteriorado del inmueble, por lo que solicitó que solo se otorgara $8,445.12 a la señora Robinson, por la diferencia entre los primeros cinco (5) meses de renta pagados y la reducción de $129.88 por el servicio de agua y $425.00 en costas.

Por su parte, el 22 de septiembre de 2025, la señora Robinson presentó su alegato, en el que adujo que la señora Flores Rodríguez renunció a los argumentos de daños en el juicio e intentó introducir nueva evidencia posterior al TPI dictar *Sentencia.*[32] Subrayó que, en la vista, la apelante nunca mencionó la falta de llaves ni la imposibilidad de inspeccionar el apartamento, teoría que levantó posterior al juicio. Indicó que la Regla 43.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 43.1, sobre enmiendas o determinaciones iniciales o adicionales estaba limitada a aclarar o corregir hallazgos, no añadir evidencia, por lo que el foro primario la denegó correctamente. Esgrimió que la contención de la apelante respecto a que impidió que la corredora de bienes raíces realizara la inspección no se planteó en la vista. Al mismo tiempo, especificó que el contrato se pactó la devolución de las llaves, no su entrega personal, por lo que cumplió al dejarlas en una gaveta y notificarlo en dos (2) correos electrónicos.

Simultáneamente, la apelada presentó una *Moción para Desestimar [la] Apelación.* En esta, reiteró que la señora Flores Rodríguez renunció a todos los argumentos de daños, ya que guardó silencio al respecto, no peticionó inspección ni aplazamiento e intentó

---

[32] Tras evaluar los escritos presentados por las partes, se observó que la apelada citó casos inexistentes como jurisprudencia, tal como ocurrió con *Ortiz v. Meléndez Carrión*, 637 F.3d 24 (1st Cir. 2011); *Pueblo v. Tribunal de Apelaciones*, 169 DPR 170 (2006), y *Pérez v. AFF*, 165 DPR 747 (2005), aunque ello no afectó la validez de sus argumentos ni los hechos del caso. Asimismo, dicha parte hizo referencia a casos que no guardaban relación con sus planteamientos, como ocurrió con *López v. Atlantic Southern Ins. Co.*, 158 DPR 562 (2003), que citó como *Miranda Soto v. Méndez & Co.*, y *Pérez v. Bauzá*, 83 DPR 220 (1961).

introducir nuevas teorías y evidencia post-sentencia, excediéndose del alcance de la revisión apelativa.

El 3 de octubre de 2025, la apelante se opuso a la desestimación. Afirmó que no procedía repetir los argumentos del alegato y que este tribunal apelativo poseía jurisdicción sobre este recurso que presentaba una controversia justiciable, se radicó oportunamente y de buena fe.

Más adelante, el 14 de octubre de 2025, la señora Robinson presentó una *Contestación de la Demandada a la Apelación de la Demandante: Respuesta a la Introducción Impropia de Nueva Evidencia y Alegaciones Alteradas.* En esta, reiteró que la apelante no podía presentar nueva evidencia y modificar los fundamentos fácticos de su reclamación en la etapa apelativa. Pues, arguyó que tuvo oportunidad de inspeccionar el apartamento antes del juicio y, al no hacerlo, renunció a reclamar daños.

Posteriormente, el 26 de octubre de 2025, la señora Flores Rodríguez presentó su *Alegato Suplementario*, en el que señaló que accedió al apartamento el 21 de junio de 2025, un día después del juicio, y encontró que estaba en condiciones deplorables. Alegó que el TPI aplicó erróneamente el contrato, al ordenar la devolución de los depósitos de seguridad —el depósito de seguridad y el depósito de mascota —. Ello, al sostener que dichos depósitos estaban destinados a cubrir los potenciales daños ocasionados por la apelada, su hija o su mascota, y que el foro primario carecía de la evidencia necesaria para ordenar su devolución íntegra, puesto que no se presentó prueba sobre el estado del inmueble antes ni después del arriendo.

La apelada argumentó que el contrato le otorgaba treinta (30) días laborables tras recibir el inmueble y las llaves para inspeccionarlo y devolver los depósitos si se encontraba en buenas condiciones. Además, planteó que no había ejercido la cláusula *vacated property* por carecer de orden judicial para entrar. Asimismo,

puntualizó que la apelada mantuvo posesión del apartamento hasta el día previo a la vista e impidió que la corredora de bienes raíces lo inspeccionara. Esgrimió que de haber accedido a la propiedad antes de la vista hubiera presentado evidencia de la condición en que se dejó. En consecuencia, precisó que el foro primario se apartó del texto contractual y le privó del derecho a descontar los daños solicitados. Manifestó que en este pleito no se peticionó adjudicar la cuantía de los daños. Por ello, nos solicitó revocar al TPI y determinar que la señora Robinson solamente tenía derecho a un reembolso de $8,445.12.

El 3 de noviembre de 2025, la señora Robinson presentó una *Respuesta a la Moción Suplementaria*. En síntesis, señaló que el TPI otorgó tiempo suficiente a las partes para presentar pruebas y testimonios. Indicó que la apelante solo presentó dos (2) correos electrónicos sobre la desocupación de la propiedad, sin alegar daños, que le faltó tiempo para inspeccionarla o preocupación por la entrega de las llaves. Añadió que la señora Flores Rodríguez ni la corredora de bienes raíces solicitaron inspeccionar el apartamento.

La apelada sostuvo que sufragó la renta en exceso y que el pago adelantado de seis (6) meses constituía renta, no una fianza que requiriera un garante. Planteó que el contrato disponía que el depósito de seguridad se devolvería dentro de treinta (30) días tras la terminación, salvo reclamaciones de daño que excedieran el desgaste normal. Además, manifestó que, dado que la apelante no presentó reclamaciones ni evidencia en dicho plazo, renunció a su derecho de solicitar daños. Argumentó que la Regla 43.1 de Procedimiento Civil, *supra*, R. 43.1, no permitía reabrir asuntos ni añadir evidencia que se pudo presentar en juicio. Por ello, expuso que, conforme a la Regla 48 de Procedimiento Civil, *supra*, R. 48, correspondía solicitar un nuevo juicio dentro de los quince (15) días siguientes a la notificación de la sentencia, lo cual no ocurrió en este caso. Asimismo, adujo que

la doctrina de cosa juzgada impedía volver a litigar asuntos discutidos previo a emitirse la sentencia.

## II.

### A. Apreciación de la prueba

Al actuar como foro revisor, nos corresponde examinar si el tribunal de instancia aplicó correctamente el derecho a los hechos del caso. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770 (2013). Para cumplir con dicha función, es indispensable que el foro primario desarrolle un expediente completo con determinaciones de hechos sustentadas en la prueba desfilada. *Íd.* Pues, a diferencia del tribunal inferior, los foros apelativos no celebramos juicios plenarios, no observamos el testimonio oral, no dirimimos la credibilidad, ni evaluamos la credibilidad. *Íd.*

No obstante, ante prueba documental, pericial o testimonial ofrecida mediante declaración escrita, este tribunal apelativo se encuentra en igual posición que el de instancia. *Ortiz et al. v. SLG Meaux*, 156 DPR 488, 495 (2002). De igual modo, las conclusiones de derecho son revisables en su totalidad por este tribunal. *Dávila Nieves v. Meléndez Marín, supra*, pág. 770. Ahora bien, como norma general, los tribunales apelativos consideramos correctas las determinaciones de hechos y la apreciación de la credibilidad de los testigos realizadas por el foro primario. *Íd.*, pág. 771. Por esta razón, la intervención de este tribunal apelativo en la revisión de la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos solo procede ante error manifiesto, pasión, prejuicio o parcialidad. *WMM, PFM et al. v. Colegio et al.*, 211 DPR 871 (2023); *Pueblo v. Hernández Doble*, 210 DPR 850, 866 (2022); *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021).

### B. Suficiencia de la prueba

La Regla 110 de Evidencia, 32 LPRA Ap. VI, R. 110, establece que el peso de la prueba recae en la parte que perdería el caso si no

se presentara evidencia, y que la obligación de presentar prueba inicialmente corresponde a quien sostiene la afirmativa del asunto en controversia. Véase, además, *Pereira Suárez v. Jta. Dir. Cond.*, 182 DPR 485 (2011); *Reece Corp. v. Ariela, Inc.*, 122 DPR 270 (1988); *Asoc. Auténtica Empl. v. Municipio*, 111 DPR 527 (1981). En otras palabras, quien afirma algo, tiene la obligación de demostrarlo mediante evidencia. E. L. Chiesa Aponte, <u>*Reglas de Evidencia Comentadas*</u>, 1ra ed., Ediciones Situm, San Juan, 2016, pág. 49.

Así, en los casos civiles, si ninguna de las partes presenta prueba, prevalece la parte demandada. *Íd.*, pág. 48. De manera particular, en casos de responsabilidad civil extracontractual, el peso de la prueba recae sobre el demandante, ya que el hecho productor del daño no se presume. *Berio v. Royal*, 164 DPR 797 (2005); *Colón y otros v. K-mart y otros*, 154 DPR 510 (2001); *Matos Miró v. Adm. Servs. Médicos de PR*, 118 DPR 567 (1987). Dicha parte debe ofrecer la evidencia necesaria para que el tribunal pueda determinar con claridad la existencia del daño y su causa. *Cotto v. CM Ins. Co.*, 116 DPR 644 (1985). Pues, meras alegaciones o teorías no constituyen prueba. *UPR Aguadilla v. Lorenzo Hernández*, 184 DPR 1001 (2012); *Pereira Suárez v. Jta. Dir. Cond., supra*; *Alberty v. Bco. Gub. De Fomento*, 149 DPR 655 (1999).

### C. Contratos

Un contrato es un negocio jurídico bilateral en el que dos (2) o más partes manifiestan su consentimiento, conforme a la ley, para crear, modificar o extinguir obligaciones. Artículo 1230 del Código Civil, 31 LPRA sec. 9751. La decisión de contratar o no y con quién es facultativa, siempre que no se ejerza de forma abusiva ni contra una disposición legal. Artículo 1232 del Código Civil, 31 LPRA sec. 9753. Asimismo, las partes pueden pactar cualquier cláusula que no sea contraria a la ley, moral o al orden público. *Íd.*

Una vez constituido, el contrato obliga a las partes a cumplir con lo pactado. *UIA v. Santander Securities y otros*, 214 DPR 601 (2024); *Rosario Rosado v. Pagán Santiago*, 196 DPR 180 (2016); *PRFS v. Promoexport*, 187 DPR 42, 52 (2012); *BBPR v. Sunc. Talavera*, 174 DPR 686 (2008). Así, lo acordado en un contrato tiene fuerza de ley entre las partes, sus sucesores y terceros. Artículo 1233 del Código Civil, *supra*, sec. 9754. Por ello, la contravención de una obligación contractual conlleva, entre otros, el cumplimiento específico de lo pactado. *PRFS v. Promoexport, supra.*

A falta de previsión contractual o ante la ineficiencia de alguna cláusula, el contrato se complementa con las normas imperativas, las supletorias, los usos del lugar de celebración del contrato y la buena fe. Art. 1236 del Código Civil, *supra*, sec. 9757. Ahora bien, cuando los términos son claros y específicos, no procede interpretación y se atiende el sentido literal de las palabras. *Asoc. Res. Los Versalles v. Los Versailles*, 194 DPR 258, 267 (2015); Véase también, Art. 354 del Código Civil, *supra*, sec. 6342. Sin embargo, si el contrato requiere interpretación y no se puede depender del sentido literal de las palabras, se debe atender la intención de las partes al contratar. *Íd.*; *Suárez Figueroa v. Sabanera Real, Inc.,* 173 DPR 694, 711 (2008); *Municipio Mayagüez v. Lebrón,* 167 DPR 713 (2006). Al respecto, el Tribunal Supremo indicó lo siguiente en el caso citando al tratadista Luis Díaz Picazo en *Fundamentos del Derecho Civil Patrimonial*, Madrid, Ed. Tecnos, 1979, Vol. I, págs. 251-252, indicó que:

> [Los contratos] deben interpretarse de acuerdo con la buena fe … [que es] un [estándar] de conducta arreglada a los imperativos éticos exigibles de acuerdo con la conciencia social imperante … Los contratos han de ser interpretados presuponiendo una lealtad y una corrección en su misma elaboración, es decir, entendiendo que las partes al redactarlas quisieron expresarse según el modo normal propio de gentes honestas y no buscando circunloquios, confusiones deliberadas u oscuridades … El contrato debe ser interpretado de manera que el sentido que se le atribuya sea el más conforme para llegar a un desenvolvimiento leal de las relaciones contractuales y para llegar a las consecuencias contractuales exigidas conforme a las normas éticas. La buena fe impone también la aplicación de las ideas de

confianza y autorresponsabilidad en la interpretación ... Las declaraciones de voluntad deben interpretarse en el sentido más conforme con la confianza que hayan podido suscitar de acuerdo con la buena fe. *Negrón Rivera y Bonilla Ex parte*, 120 DPR 61 (1987).

Igualmente, el juzgador deberá considerar los actos anteriores, coetáneos y posteriores, así como todas las circunstancias concurrentes al momento de la contratación y armonizar los términos contractuales con la verdadera intención de las partes. *Íd.*

### D. Determinaciones de hechos enmendadas o adicionales

Cualquier parte puede solicitar al tribunal de instancia que corrija o añada determinaciones de hechos o conclusiones de derecho para fundamentar adecuadamente la sentencia, conforme a la Regla 43 de Procedimiento Civil, *supra*, R. 43. R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta. ed., Lexisnexis de Puerto Rico, Inc., San Juan, 2017, pág. 466. El propósito principal de esta solicitud es asegurar que el juzgador quede satisfecho en que atendió todas las controversias y que los tribunales apelativos estén completamente informados sobre la base decisiva. *Morales y otros v. The Sheraton Corp.*, 191 DPR 1, 10 (2014); *SLG Szendrey-Ramos v. F. Castillo*, 169 DPR 873, 879-880 (2007), *citando a* J. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, Puerto Rico, Publicaciones JTS, 2000, T. I, pág. 695.

Las partes no pueden usar este mecanismo para presentar nueva prueba, relitigar controversias o plantear teorías distintas. *Íd., citando a* J. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, Puerto Rico, Publicaciones JTS, 2011, T. IV, pág. 1261.

Además, es menester destacar que una solicitud bajo la Regla 43.4 de Procedimiento Civil, *supra*, R. 43.3, no obliga al foro primario a formular determinaciones adicionales. *Constructora Estelar v. Aut. Edif. Púb.*, 183 DPR 1, 26 (2011). Pues, el uso de la palabra "podrá" confiere carácter discrecional a la formulación de determinaciones de hechos y de derechos adicionales. *Blas v. Hosp. Guadalupe*, 146 DPR

267, 319 (1998). A su vez, el juzgador no puede formular determinaciones que contradigan hechos ya establecidos o sus propias conclusiones de derecho avaladas por la prueba desfilada. *Constructora Estelar v. Aut. Edif. Púb., supra.* En tal sentido, si bien este mecanismo permite que el foro primario rectifique cualquier error, no está obligado a emitir determinaciones adicionales de considerarlas improcedentes. *Carattini v. Collazo Syst. Analysis, Inc.,* 158 DPR 345, 357 (2003).

### III.

En el recurso que nos ocupa, la señora Flores Rodríguez circunscribió su planteamiento de error en la determinación de la devolución íntegra de los depósitos de mascota y seguridad a la señora Robinson. La apelante alegó que el TPI erró al ordenar dicha devolución, puesto que durante la vista no se presentó evidencia sobre la condición en que se encontraba el apartamento al momento de ser entregado. Sostuvo que ambos depósitos tenían la finalidad de cubrir posibles daños causados al inmueble o su mobiliario y únicamente debían devolverse si la propiedad se encontraba en buenas condiciones, conforme al contrato de arrendamiento.

El contrato objeto del litigio establecía, en lo pertinente, lo siguiente referente a dichos depósitos de seguridad:

PAYMENTS – The initial payment will consist of a security deposit (equivalent to one month's rent), $1,500 pet deposit, the first month's rent, and five months paid in advance. [...]

SECURITY DEPOSIT – LESSEE will give the LESSOR a security deposit equal to FOUR THOUSAND FIVE HUNDRED DOLLARS ($4,500.00). LESSOR shall hold, in good faith, the Security Deposit as security for the full and faithful performance by LESSEE of each and every term, covenant, and condition of this Agreement. LESSEE shall not apply, at any time, the Security Deposit to any month's partial or complete rent. LESSOR will be responsible for returning to LESSEE all or any portion of the Security Deposit within THIRTY (30) LABOR days after the expiration of this Agreement upon the surrender of the Property by LESSEE in good condition, normal wear and tear excepted, including the keys delivered to LESSEE on the Effective Date of this Agreement, and all rent and applicable water bill(s) fully and completely paid. The security deposit may be used to cover any unpaid water bill. Notwithstanding the LESSEE's

> payment of the pet deposit, the security deposit may be used to cover any damages caused by LESSEE's pet. [...]
>
> PET CLAUSE – Pets are not allowed in the property, with the exception of Prince, a short hair tabby, 12-15 pounds. LESSEE will give LESSOR a $1,500.00 pet deposit, which shall be returned, in whole or in part, at the end of the lease, as long as there is no pet damage to deduct. All furniture should be protected by LESSEE. To that end, LESSEE agrees to buy and use a couch scratch protector to avoid any potential damage from her pet. Notwithstanding the payment of the pet deposit, the security deposit may be used to cover any damages caused by Prince in addition to the pet deposit.

Tras un análisis sosegado del contrato en cuestión surge que las partes pactaron un depósito de seguridad de $4,500.00 y un depósito de mascota de $1,500.00. El contrato estableció que dichos depósitos se devolverían dentro de los treinta (30) días laborables siguientes a la entrega del inmueble y las llaves, siempre y cuando la propiedad se entregara en buen estado, salvo el desgaste normal por uso. Además, el contrato autorizaba utilizar tales depósitos para cubrir cualquier daño ocasionado por la mascota de la apelada.

Sin embargo, durante la vista celebrada ante el TPI, la señora Flores Rodríguez no presentó prueba alguna sobre la condición del apartamento ni sobre la existencia de posibles daños que justificaran la retención total o parcial de los depósitos. Tampoco solicitó al tribunal primario la concesión de algún remedio que le permitiera inspeccionar el inmueble y su mobiliario antes de que se emitiera la *Sentencia*. Ante esa falta de prueba, el foro primario no contaba con fundamentos para inferir la existencia o no de daños, empero, resolvió que procedía la devolución de ambos depósitos a la señora Robinson. No obstante, en su apelación, la señora Flores Rodríguez alegó que no pudo acceder al apartamento antes de la vista, ya que la apelada aún tenía posesión de este.

Así las cosas, este tribunal concluye, considerando los términos del contrato, y el momento en que se celebró el juicio, que el TPI no contaba con información suficiente para emitir una determinación final sobre la devolución de los referidos depósitos,

ya que era indispensable examinar la condición del inmueble y su mobiliario antes y después del arrendamiento, conforme se pactó en el contrato.

Por consiguiente, procede revocar parcialmente la *Sentencia* apelada en lo relativo a la devolución de los depósitos de mascota y seguridad, los cuales se quedarán consignados en el foro primario hasta que se resuelva la controversia. Se devuelve el caso al TPI para que celebre una vista limitada a determinar si la apelante tenía derecho a retener cierta cantidad de dichos depósitos, si algo, considerando la prueba que se presente respecto a la condición del apartamento y su mobiliario antes y después del arrendamiento. De otra parte, se mantienen el resto de la determinación apelada.

Es menester precisar que esta disposición no debe interpretarse como una conclusión de que la señora Robinson únicamente tendría derecho a la suma de $8,445.12 de forma definitiva, tal como peticionó la apelante. Pues, aún permanece pendiente la adjudicación de los $4,500.00 del depósito de seguridad y los $1,500.00 de depósito de mascota, y que cuantía de estas partidas, si alguna, le correspondería a la señora Robinson.

## IV.

Por los fundamentos que anteceden, se revoca parcialmente la *Sentencia* apelada, solamente respecto a la otorgación de los depósitos de mascota y seguridad a favor de la señora Robinson y se devuelve el asunto al TPI para la continuación de los procedimientos conforme a lo previamente expuesto en esta Sentencia.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones